Revised August 25, 1998

**UNITED STATES COURT OF APPEALS**

**for the Fifth Circuit**

_____

No. 96-40634

_____

LORENZO COLSTON,

Plaintiff-Appellee,

and

YOLANDA MICHELLE COLSTON,
Individually and as Next Friend of
Lauren Colston and Quinton Colston, Minor Children

Intervenors Plaintiff-Appellees,

VERSUS

BRYAN BARNHART, Texas Department of Public Safety Officer; et al,

Defendants,

BRYAN BARNHART,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Eastern District of Texas
_____

July 14, 1998

ON APPLICATION FOR REHEARING EN BANC
(Opinion November 19, 1997, 5th Cir. 1997 ___F.3d___)

Before KING, DAVIS and DeMOSS, Circuit Judges.

DAVIS, Circuit Judge:

The court having been polled at the request of one of the members of the court and a majority of the judges who are in regular active service not having voted in favor (Fed. R. App. P. and 5th Cir. R. 35), the Application for Rehearing En Banc is

DENIED. Colston's Petition for Rehearing is also DENIED. We take this opportunity, however, to expand upon our previous discussion concerning our exercise of jurisdiction over this appeal.

In *Johnson v. Jones,* 515 U.S. 304 (1995), and *Behrens v. Pelletier*, 116 S. Ct. 834 (1996), the Supreme Court recently addressed the appealability of orders denying summary judgment on the basis of qualified immunity. In *Johnson*, the Court held that a defendant may not appeal such an order insofar as that order determines whether or not the summary judgment record sets forth a "genuine" issue of fact for trial. 515 U.S. at 319-20. In *Behrens*, the respondent argued that an appeal of the district court's denial of summary judgment was not available under *Johnson* because the district court had concluded that "[m]aterial issues of fact remain[ed]." 116 S. Ct. at 842 (second alteration added). The Court was quick to point out, however, that the respondent had misread *Johnson,* observing that the denial of summary judgment often includes a determination that there are controverted issues of material fact and that "*Johnson* surely does not mean that every such denial of summary judgment is nonappealable." *Id.* Rather, the Court explained, "*Johnson* held, simply, that determinations of evidentiary sufficiency at summary judgment are not immediately appealable merely because they arise in a qualified-immunity case[.]" *Id.* The Court then held that "*Johnson* permits a defendant to claim on appeal that all of the conduct which the district court deemed sufficiently supported for purposes of summary judgment" was objectively reasonable, and further

2

instructed that where the district court has not identified the particular charged conduct that it deemed adequately supported, "*Johnson* recognizes that under such circumstances 'a court of appeals may have to undertake a cumbersome review of the record to determine what facts the district court, in the light most favorable to the nonmoving party, likely assumed.'" *Id.* (quoting *Johnson*, 515 U.S. at 319).

We believe that the key to understanding *Johnson* and *Behrens* rests on the recognition that when a district court denies a motion for summary judgment on the ground that "genuine issues of material fact remain," the court has made two distinct legal conclusions. First, the court has concluded that the issues of fact in question are genuine, i.e., the evidence is sufficient to permit a reasonable factfinder to return a verdict for the nonmoving party. *See Ginsberg 1985 Real Estate Partnership v. Cadle Co.*, 39 F.3d 528, 531 (5th Cir. 1994) (defining "genuineness"). Second, the court has concluded that the issues of fact are material, i.e., resolution of the issues might affect the outcome of the suit under governing law. *See id.* (defining "materiality").

*Johnson* makes clear that an appellate court may not review a district court's determination that the issues of fact in question are genuine. As the Court explained in *Behrens*, "determinations of evidentiary sufficiency at summary judgment are not immediately appealable merely because they happen to arise in a qualified-immunity case; if what is at issue in the sufficiency determination is nothing more than whether the evidence could support a finding

3

that particular conduct occurred, the question decided is not truly 'separable' from the plaintiff's claim, and hence there is no 'final decision' under *Cohen* and *Mitchell*."[1]  116 S. Ct. at 842. *Behrens,* on the other hand, makes clear that an appellate court is free to review a district court's determination that the issues of fact in question are material.

By way of illustration, take, for example, a § 1983 case where the plaintiff alleges that the defendant police officer shot him and the defendant alleges that he merely beat the plaintiff with his baton.  The district court denies the defendant's motion for summary judgment on the ground that a genuine issue of material fact exists as to what type of weapon was involved.  The defendant might argue on appeal that the district court erred in two respects.  First, he might argue that the district court erroneously concluded that a genuine issue of fact exists, i.e., that the plaintiff presented insufficient evidence from which a reasonable juror could conclude that the defendant shot him rather than merely hit him with a baton.  Under *Johnson,* the appellate court could not consider this argument on interlocutory appeal.

Second, the defendant might argue that the district court

---

[1]    In *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949), the Court held that orders "which finally determine claims of right separable from, and collateral to, rights asserted in [an] action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated," are "final decisions" under 28 U.S.C. § 1291.  In *Mitchell v. Forsyth*, 472 U.S. 511, 528 (1985), the Court held that a district court's order denying a defendant's motion for summary judgment on the basis of qualified immunity, to the extent it turns on an issue of law, is appealable under *Cohen.*

4

erroneously concluded that a material issue of fact exists, i.e., that regardless of whether he shot the plaintiff or hit him with a baton his actions did not constitute excessive force. Under *Behrens*, the appellate court could consider this argument on interlocutory appeal.

When the district court denies a motion for summary judgment and merely states that "genuine issues of material fact remain" without identifying those issues, application of the *Johnson/Behrens* rule becomes significantly more problematic. On interlocutory appeal, the defendant will argue that the factual issues the district court has found in dispute are immaterial. In doing so, the defendant will doubtless set forth a factual scenario that he claims is the scenario supported by the summary judgment evidence viewed in the light most favorable to the plaintiff. He will then proceed to argue that, even under this factual scenario, he is entitled to qualified immunity. Without a statement from the district court as to which particular issues of fact it found in dispute, however, it will be impossible for the appellate court to determine whether the defendant's version of the facts viewed in the light most favorable to the plaintiff mirrors the district court's version of the facts viewed in the light most favorable to the plaintiff. If the appellate court cannot make this determination, then it will be unable to conclude whether the defendant is properly challenging the materiality of the factual issues the district court determined to be in dispute or whether the defendant is in effect improperly challenging the genuineness

5

of those issues. Only if the defendant is challenging the former will the appellate court have jurisdiction over the defendant's appeal. Accordingly, the Supreme Court has instructed that under such circumstances "the court of appeals may have to undertake a cumbersome review of the record to determine what facts the district court, in the light most favorable to the nonmoving party, likely assumed." *Behrens*, 116 S. Ct. at 842.

In other words, where the district court does not identify those factual issues as to which it believes genuine disputes remain, an appellate court is permitted to go behind the district court's determination and conduct an analysis of the summary judgment record to determine what issues of fact the district court probably considered genuine. The appellate court is permitted to do so in order to ensure that the defendant's right to an immediate appeal on the issue of materiality is not defeated solely on account of the district court's failure to articulate its reasons for denying summary judgment.

In this case, the district court in denying summary judgment did more than state that "genuine issues of material fact remain." To wit, the district court stated that it found genuine issues of fact remained as to "what information Trooper Barnhart possessed immediately prior to and at the moment he fired the three shots at [Colston.]"[2] Although the court's statement certainly narrowed the

---

[2] The district court also stated that it found that genuine issues of fact remained as to "whether Officer Barnhart had a reasonable belief of danger from the fleeing [Colston] which would justify the use of deadly force in self-defense." The district court's statement, however, merely recasts the ultimate

6

field of facts that it might conceivably have found to be at issue, it still lacked sufficient specificity to permit us to determine whether we had jurisdiction over Barnhart's appeal and whether the district court may have concluded that there were genuine disputes as to facts that were actually immaterial.[3]  By contrast, if the district court had made a more specific statement such as "summary judgment is denied because a genuine issue of fact exists as to whether it would have appeared to a reasonable officer in Barnhart's position that Colston was running in the direction of the patrol car," we would have been able to make these determinations.  We believe it unwise to attempt to articulate a test for the degree of specificity with which a district court must identify genuine issues of fact for these purposes.  It must depend on the district court's explanation of the nature of the factual dispute in light of the summary judgment evidence in each

determination in this case -- whether Barnhart's behavior was objectively reasonable under the Fourth Amendment.  That determination is a question of law.  *See United States v. Wilson*, 36 F.3d 1298, 1303 (5th Cir. 1993); *United States v. Rich*, 992 F.2d 502, 505 (5th Cir. 1993).

[3]  For instance, the district court might have concluded that there was a genuine issue of fact as to whether it would have appeared to a reasonable officer in Barnhart's position that Colston had seriously injured the other officer on the scene, thus justifying the use of deadly force.  *See Tennessee v. Garner*, 471 U.S. 1, 11 (1985) (use of deadly force to prevent escape justifiable where officer has probable cause to believe suspect has committed crime involving the infliction of serious physical harm).  If the undisputed facts showed that Colston was threatening Barnhart with serious bodily harm, thus justifying the use of deadly force, then it would be immaterial whether it would have appeared to a reasonable officer in Barnhart's position that Colston had seriously injured the other officer on the scene.  *See id.* (use of deadly force to prevent escape justifiable where suspect threatens officer with serious physical harm).

particular case. In this case the district court's statement was not sufficiently specific. This lack of specificity required us to undertake a review of the record to determine whether we had jurisdiction over Barnhart's appeal. As our majority opinion reflects, we conducted this review, and because we determined that Barnhart's version of the facts mirrored the version of the facts that we determined the district court likely assumed, we concluded that Barnhart was properly challenging the materiality of the factual issues the district court believed in dispute and that we therefore possessed jurisdiction over his appeal. On the merits, we concluded that Barnhart was entitled to qualified immunity.

ENDRECORD

DeMOSS, Circuit Judge, dissenting from order on application for rehearing en banc.

While the majority is correct in stating that "a majority of the judges who are in regular active service [have not] voted in favor" of rehearing en banc, Order on Reh'g, *supra*, at 1, it is more accurate and informative to state that the Court divided equally, eight to eight, on the motion for rehearing en banc. That tie vote is reflective of the difficulty which the judges of this Court have in reading and interpreting the decisions of the Supreme Court in **Johnson v. Jones**, 515 U.S. 304, 115 S. Ct. 2151 (1995), and **Behrens v. Pelletier**, 516 U.S. 299, 116 S. Ct. 834 (1996), as they speak to the core question involved in this appeal: do we have appellate jurisdiction to review the district court's denial of summary judgment sought on the grounds of qualified immunity?

This case presents serious issues concerning our appellate jurisdiction in cases involving the denial of summary judgment on the grounds of qualified immunity. I express the following views in the hopes that they may help to attract the Supreme Court's attention to the increasingly complex panorama of doctrine and dissent that has evolved as the courts of appeals have struggled to reconcile the holdings of **Johnson** and **Behrens**.

In light of the tie vote on whether to reconsider this case en banc, the panel opinion published at 130 F.3d 96 still stands as the opinion of this Court. I write now to expand on the dissent

9

which I filed in the panel opinion, just as the majority expands on its original majority opinion. In Part I, I elaborate on the reasons which I first mentioned in my panel dissent as to why this Court does not have appellate jurisdiction over this controversy. In Part II, I respond to the new theory proposed by the majority in this order on rehearing as to how our Court does have appellate jurisdiction. Finally, in Part III, I explain how the majority's approach to the problem presented in this case is at odds with the Supreme Court's guidance regarding the competing policies behind the availability of both a remedy for deprivations of constitutional rights under the color of state law and a qualified immunity for government officials who have violated citizens' rights in the course of executing their official duties.

## I.

**A. Our appellate jurisdiction to review "final decisions," 28 U.S.C. § 1291, does not encompass collateral orders to the extent that they implicate the substantive merits of a complaint.**

The original panel opinion reversed the district court's considered judgment that fact issues precluded summary judgment on the merits; and it dismissed the case based on its appellate determination that Trooper Bryan Barnhart acted in an "objectively reasonable" fashion when he shot Lorenzo Colston twice in the back. Appellate jurisdiction to make this judgment was, however, lacking.

A straightforward application of the authorities relevant to exercising interlocutory appellate jurisdiction reveals that we may not review the objective reasonableness of Trooper Barnhart's conduct on appeal from the district court's denial of his motion for summary judgment. This is so primarily because applying that standard for determining whether Colston's Fourth Amendment rights were violated, set forth in **Graham v. Connor**, 490 U.S. 386, 395, 109 S. Ct. 1865, 1871 (1989), is not, as Supreme Court precedent requires, separable from the merits of the controversy.

1. **The collateral-order doctrine governs the review of qualified-immunity appeals from denial of summary judgment.**

Appellate jurisdiction over interlocutory appeals from denials of summary judgment based on qualified immunity rests on three essential legal principles, as delineated by the Supreme Court in **Johnson**. *See **Johnson***, 515 U.S. at 309-13, 115 S. Ct. at 2154-56. First, 28 U.S.C. § 1291, the only possible statutory basis for appellate jursidiction in this case, provides that we may review only "final decisions" of a district court. Second, courts use a practical application of § 1291 to allow interlocutory review of certain orders which are considered final only because they are collateral to the core of the case. *See **Cohen v. Beneficial Indus. Loan Corp.***, 337 U.S. 541, 69 S. Ct. 1221 (1949). "To come within the 'small class' of . . . **Cohen**, the order must [1] conclusively determine the disputed question, [2] resolve an important issue

completely separate from the merits of the action, and [3] be effectively unreviewable on appeal from a final judgment." *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144-45, 113 S. Ct. 684, 688 (1993) (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468, 98 S. Ct. 2454, 2458 (1978) (footnote omitted)) (internal quotation marks omitted, alterations in original). Third, as an application of the collateral-order doctrine, interlocutory appeals from the denial of summary judgment have been permitted in the qualified-immunity context for the purpose of resolving the abstract legal question of whether the lawlessness of a defendant's alleged acts had been clearly established at the time of their commission. *See Mitchell v. Forsyth*, 472 U.S. 511, 525, 105 S. Ct. 2806, 2814-15 (1985).

2. *The collateral-order doctrine does not apply in this case because the "objective reasonableness" of Trooper Barnhart's conduct is not separable from the merits of the controversy.*

An interlocutory appeal from the denial of summary judgment in the qualified-immunity context is simply an application of the collateral-order doctrine. This much is clear from *Johnson*, in which the Supreme Court found no appellate jurisdiction to review the district court's fact-based sufficiency-of-the-evidence determination that the defendants were not entitled to summary judgment based on qualified immunity. The *Johnson* Court specifically distinguished its decision from the Court's earlier

-12-

treatment of the clearly-established-law prong of qualified-immunity analysis in *Mitchell v. Forsyth*, 472 U.S. 511, 105 S. Ct. 2806 (1985). *See Johnson*, 515 U.S. at 314, 115 S. Ct. at 2157. Disputes over the application of the clearly-established-law prong of the qualified-immunity inquiry are separable from the merits of a controversy because "'[a]n appellate court reviewing the denial of the defendant's claim of immunity need not consider the correctness of the plaintiff's version of the facts.'" *Id.* at 313, 115 S. Ct. at 2156 (quoting *Mitchell*, 472 U.S. at 528, 105 S. Ct. at 2816) (alteration in original).[4]

Trooper Barnhart's contention here on appeal -- that his conduct was objectively reasonable and therefore Colston's suit should be dismissed -- is not reviewable precisely because it does not, as the doctrine of collateral orders requires, "resolve an important issue completely separate from the merits of the action." *Puerto Rico Aqueduct*, 506 U.S. at 144-45, 113 S. Ct. at 688; *Coopers & Lybrand*, 437 U.S. at 468, 98 S. Ct. at 2458. *Johnson* elaborated on the separability inquiry, noting that

> The requirement that the matter be separate from
>
> the merits of the action itself means that review

---

[4] In the present case, there is no dispute over the distinct and separate legal issue of whether the law had been clearly established in this case. There is no doubt that Colston's constitutional right under the Fourth Amendment to be free from Trooper Barnhart's use of unreasonable and excessive force arising out of this police stop was clearly established long before the circumstances involved in this case occurred. The panel majority opinion explicitly recognizes both that this constitutional right was clearly established and that Colston appropriately alleged a violation of his constitutional rights in this § 1983 action. *See Colston*, 130 F.3d at 99.

-13-

> *now* is less likely to force the appellate court to consider approximately the same (or a very similar) matter more than once, and also seems less likely to delay trial court proceedings (for, if the matter is truly collateral, those proceedings might continue while the appeal is pending).

*Johnson*, 515 U.S. at 311, 115 S. Ct. at 2155 (citing CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3911, at 333-34 (2d ed. 1992)) (emphasis in original).

Though the matter does not require elaborate exposition, Trooper Barnhart's argument that his conduct was objectively reasonable plainly does not meet this standard. Rather than being a separate, distinct, collateral issue, the objective reasonableness of Trooper Barnhart's actions is in fact the precise issue that would have been presented to the jury if Colston's suit had gone to trial. Should there have been an eventual appeal from a final judgment on the merits of Colston's claims, our Court would have been confronted with the exact same issue. And to top it all off, in this case the true hallmark of a collateral order -- the continuation of trial proceedings while the appeal progressed -- has not occurred. As is now apparent, it would have been a complete waste of time for the district court and the court of appeals to simultaneously adjudicate the objective reasonableness of shooting Colston twice in the back as he fled the scene.

The panel majority does not contend, because they could not possibly establish, that their review of the objective reasonableness of Trooper Barnhart's arrest technique is separable from the merits of Colston's complaint. That single factor is completely determinative of the absence of appellate jurisdiction over Trooper Barnhart's appeal.

3.   **The panel majority's approach impermissibly engages in case-specific factual analysis to determine appealability.**

As a final matter concerning the panel majority's implicit determination that the district court's denial of summary judgment was an appealable collateral order, I note that the panel majority's treatment of this issue is utterly inconsistent with the yet another principle of the **Cohen** doctrine. Both **Johnson** and **Behrens** acknowledge that courts "decide appealability for categories of orders rather than rather than individual orders," **Johnson**, 115 S. Ct. at 2157 (citing **Digital Equip. Corp. v. Desktop Direct, Inc.**, 511 U.S. 863, 863, 114 S. Ct. 1992, 1993 (1994) (syllabus)), and "'[a]ppeal rights cannot depend on the facts of a particular case,'" **Behrens**, 116 S. Ct. at 841 (quoting **Carroll v. United States**, 354 U.S. 394, 405, 77 S. Ct. 1332, 1339 (1957), and citing **Digital Equip.**, 511 U.S. at 868, 114 S. Ct. at 1996). "[T]he issue of appealability under § 1291 is to be determined for the entire category to which a claim belongs, without regard to the chance that the litigation at hand might be speeded, or a

-15-

'particular injustic[e]' averted by a prompt appellate court decision." **Digital Equip.**, 511 U.S. at 868, 114 S. Ct. at 1996 (quoting **Van Cauwenberghe v. Biard**, 486 U.S. 517, 529, 108 S. Ct. 1945, 1953 (1988)) (alteration in original, internal citation omitted).

The majority's approach to determining the propriety of interlocutory appellate jurisdiction violates this principle in spectacular fashion. The panel admits that its approach required it to "undertake a review of the record to determine whether we had jurisdiction over Trooper Barnhart's appeal." Order on Reh'g, *supra.*, at 8. But what did the panel expect to find in the record other than facts? "*Appeal rights cannot depend on the facts of a particular case.*" **Behrens**, 116 S. Ct. at 841 (internal quotation marks omitted, emphasis supplied).

The error of the panel opinion's approach is evident. Neither **Johnson** nor **Behrens** contemplates a "cumbersome review of the record" for the threshold purpose of determining whether there is appellate jurisdiction. It is, rather, only a suggestion for how to proceed on determining whether the plaintiff alleged a violation of then-clearly-established law after appellate jurisdiction has already been determined.

To conclude, there is one, primary, eminently simple reason why interlocutory appeal was unavailable to Trooper Barnhart. In order for us to proceed under § 1291, there must be a final order. In the absence of a final judgment, the elements of the collateral-order doctrine must be satisfied to permit appeal under that

-16-

statute. One of those elements is separability of the appealed order from the ultimate merits of the controversy, and that element is simply not present in this case. Moreover, the panel majority impermissibly tailors its jurisdictional analysis to the facts of the case. The collateral-order doctrine cannot be stretched to establish appellate jurisdiction in this case, and the appeal should have been dismissed.

**B.** ***Behrens v. Pelletier* does not create an exception to the collateral-order doctrine's separability requirement.**

The above reasoning notwithstanding, the majority relies upon language in ***Behrens*** to support its assumption of appellate jurisdiction. Seven months after it decided ***Johnson***, the Supreme Court handed down its decision in ***Behrens***. After disposing of the primary issue in the case,[5] the Court went on to address two additional grounds upon which the respondent in that case argued that interlocutory appeal was not available. The discussion of the second of these two issues, which involved some elaboration on the holding in ***Johnson***, is the source of much of the confusion which now exists in our Court and in other courts of appeals as to the

_____

[5] The Supreme Court granted certiorari in ***Behrens*** to evaluate the Ninth Circuit's rule that there can be only one interlocutory appeal on the issue of qualified immunity. The Court rejected that rule, holding that the mere fact that the public official in ***Behrens*** had already appealed the trial court's denial of his motion to dismiss under FED. R. CIV. P. 12(b)(6) did not preclude a further appeal when the trial court denied his motion for summary judgment on the grounds of qualified immunity. *See* ***Behrens***, 116 S. Ct. at 840.

-17-

impact and effect of **Behrens** on **Johnson**.  *See, e.g.*, **Hart v. O'Brien**, 127 F.3d 424 (5th Cir. 1997); **Elliott v. Leavitt**, 99 F.3d 640 (4th Cir. 1996), *reh'g en banc denied 7-5 with opinions*, 105 F.3d 174 (4th Cir.), *cert. denied*, 117 S. Ct. 2512 (1997).

The relevant discussion in **Behrens** begins by identifying and reaffirming the basic distinction that **Johnson** draws as to the appealability of a district court's decisions on "issues of law" and the nonappealability of those decisions on "issues of fact." *See* **Behrens**, 516 U.S. at 838-39, 116 S. Ct. at 305-06; **Johnson**, 515 U.S. 313-18, 115 S. Ct. at 2156-58.  **Behrens** confirms that interlocutory appeal is not available when the trial court relies upon the existence of genuine factual disputes to deny summary judgment.  *See* **Behrens**, 516 U.S. at 842, 116 S. Ct. at 313.  Such disputes, **Behrens** reasons, are not collateral orders under the **Cohen** doctrine because they are not "truly separable" from the plaintiff's claim.  See *supra* Part I.A.2.  When, on the other hand, the district court's denial is based solely upon "an 'abstract issu[e] of law' related to qualified immunity -- typically, the issue whether the federal right allegedly infringed was 'clearly established,'" then the issue to be addressed on appeal is sufficiently distinct from the plaintiff's claim to support interlocutory appeal.  **Id**. (quoting **Johnson**, 515 U.S. at 317, 115 S. Ct. at 2158) (internal citations omitted, alterations in original).  On these points, **Behrens** and **Johnson** are in perfect agreement.

The confusion is created by the following passage from *Behrens*:

> Here the District Court's denial of petitioner's summary-judgment motion necessarily determined that certain conduct attributed to petitioner (which was controverted) constituted a violation of clearly established law. *Johnson* permits petitioner to claim on appeal that all of the conduct which the District Court deemed sufficiently supported for purposes of summary judgment met the *Harlow* [*v. Fitzgerald*, 457 U.S. 800, 102 S. Ct. 2727 (1982)] standard of "objective legal reasonableness." This argument was presented by petitioner in the trial court, and there is no apparent impediment to its being raised on appeal. And while the District Court, in denying petitioner's summary-judgment motion, did not identify the particular charged conduct that it deemed adequately supported, *Johnson* recognizes that under such circumstances "a court of appeals may have to undertake a cumbersome review of the record to determine what facts the district court, in the light most favorable to the nonmoving party, likely assumed." *Johnson*, [515 U.S. at 319], 115 S. Ct., at 2159. That is the task now facing the Court of Appeals in this case.

***Behrens***, 516 U.S. at 313, 116 S. Ct. at 842.[6]

1.    **Behrens v. Pelletier** *refers only to determining "objective legal reasonableness" for qualified-immunity purposes under* **Harlow v. Fitzgerald** *-- not other semantically similar merits-bound inquiries.*

The second sentence of the above-quoted paragraph is where the ambiguities and uncertainties first arise.[7]   The original panel opinion applies this sentence as if it gives Trooper Barnhart, who invoked qualified immunity, a license to seek interlocutory review of the denial of his summary judgment motion on the ground that, assuming the truth of whatever allegations Colston made, Trooper

---

[6]    The first sentence of this paragraph points out that by denying summary judgment the trial court implicitly ruled that if the conduct giving rise to the lawsuit was what was alleged in the complaint, it violated clearly established law.  This makes sense because if a trial court were to determine that the pertinent law was not clearly established at the time of the defendant's conduct, the trial court would grant the defendant's motion for summary judgment on qualified immunity, not deny it.  *See, e.g.*, ***Winfield v. Bass***, 106 F.3d 525, 529 (4th Cir. 1997) (en banc).  That inherent determination is immediately appealable even when, as in ***Behrens***, the district court may also have noted the existence of nonappealable factual disputes.  *See, e.g.*, ***id.*** at 529-30.

[7]    I note that after generally tracking the language of ***Johnson***, this is where the ***Behrens*** opinion departs from previously-familiar territory.  The semantic switch from discussing the typical qualified-immunity issue of "clearly established law" to a hypothetical (in ***Behrens***) issue of "objective legal reasonableness" creates many of the problems that are now plaguing the courts of appeals.

Neither the phrase "deemed sufficiently supported" nor the phrase "objective legal reasonableness" appear anywhere in the ***Johnson*** opinion.  Moreover, ***Harlow*** is cited only once in ***Johnson***.  *See **Johnson***, 515 U.S. at 311, 115 S. Ct. at 2155 (citing ***Harlow***, 457 U.S. at 818, 102 S. Ct. at 2738).  Neither the portion of ***Johnson*** that cites ***Harlow*** nor the portion of ***Harlow*** which is cited in ***Johnson*** has anything to do with determining what the trial court found or did not find in its order denying summary judgment.

-20-

Barnhart's conduct nevertheless met the *Graham* standard of being objectively reasonable.

The majority erred when it construed *Behrens* in that manner. Such a reading is not supported by *Behrens*, which refers to "the *Harlow* standard of 'objective legal reasonableness.'" *Behrens*, 516 U.S. at 313, 116 S. Ct. at 842. Despite the *Harlow* standard's semantic similarity to *Graham*'s "objectively reasonable" test, that prong of *Harlow*'s qualified-immunity inquiry is different and functionally distinct from the merits-bound *Graham* inquiry. The construction in the original panel opinion thus distorts a single isolated sentence to create a direct conflict with *Johnson* and with the logical analysis and reasoning in *Behrens* itself.

**a.  The function of Harlow v. Fitzgerald's "objective legal reasonableness" qualified-immunity standard makes it a proper subject for interlocutory review.**

Proper application of the "objective legal reasonableness" standard established in *Harlow* does not establish whether the conduct in question violated the law per se. *Harlow*'s reference to "objective legal reasonableness" speaks only to a facet of whether the plaintiff alleged a violation of "clearly established statutory or constitutional rights of which a reasonable person would have known" at the time an action occurred. *Harlow*, 457 U.S. at 818, 102 S. Ct. at 2738. When the law was clearly established, *Harlow* instructs that "the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct." *Id.* at 818-19, 102 S. Ct. at 2738.

-21-

If the summary-judgment proof is sufficient to raise a genuine issue of material fact, a motion for summary judgment on the grounds of qualified immunity should be denied and the matter should be developed fully at trial.[8] *See* FED. R. CIV. P. 56(c). The primary task of an appellate court in an ordinary interlocutory qualified-immunity appeal from the denial of a motion for summary judgment is to address the abstract legal question of whether the law under which the plaintiff seeks relief was clearly established at the time of the official's conduct. *See, e.g.*, **Mitchell**, 472 U.S. at 528, 105 S. Ct. at 2815. If it was, the case should be remanded and the injured citizen should be given the opportunity to prove that the official's conduct did in fact violate the law and did in fact produce the injury.

It is possible, of course, that the injured citizen might not prevail at trial. But if the law involved at the time of the

---

[8]     In this regard the Supreme Court also said:

> By defining the limits of qualified immunity essentially in objective terms, we provide no license to lawless conduct. The public interest in deterrence of unlawful conduct and in compensation of victims remains protected by a test that focuses on the objective legal reasonableness of an official's acts. Where an official could be expected to know that certain conduct would violate statutory or constitutional rights, he should be made to hesitate; and a person who suffers injury caused by such conduct may have a cause of action.

*Id*. at 2739; *see also* **Crawford-El v. Britton**, 118 S. Ct. 1584, 1593 (1998).

-22-

conduct was clear and if the injured citizen presents sufficient proof at summary judgment to persuade the district court that a jury verdict for the injured citizen could be sustained, then the public official must bear the risk of trial just like any other civil defendant. *See generally infra* Part III. The policy -- embodied by the judge-made qualified-immunity doctrine -- of protecting public officials from frivolous claims based upon ambiguous concepts of the law must under these circumstances yield to another public policy -- dictated by Congress and embodied in 42 U.S.C. § 1983 -- of protecting citizens from damage and injury caused by the conduct of public officials which violates clearly established constitutional principles. *Cf.* **Crawford-El v. Britton**, 118 S. Ct. 1584, 1594-96 (1998).

**b.** **The function of** Graham v. Connor**'s "objectively reasonable" substantive excessive-force standard makes it an improper subject for interlocutory review.**

Instead of reading **Johnson** and **Behrens** in their proper context, the majority misreads the **Behrens** reference to "the **Harlow** standard of objective legal reasonableness" (which is closely related to the determination of whether the law was "clearly established" at any given time) to be interchangeable with the "objectively reasonable" test established in **Graham**. The **Graham** standard -- the proper test for evaluating the merits of Colston's claim[9] -- is used to determine whether an officer's conduct was

---

[9]    *See* **Graham**, 490 U.S. at 396-97, 109 S. Ct. at 1871-72. Of course, in Colston's case the proper application of the **Graham** standard is informed by the Supreme Court's observations about the

"excessive" such that it would violate the Fourth Amendment's prohibition against unreasonable seizures, but not to decide matters of qualified immunity.

This confusion was aptly demonstrated in several parts of the original majority opinion. At one point, the majority asserted: "We therefore have interlocutory jurisdiction to determine the legal issue of whether Trooper Barnhart's conduct was objectively reasonable." *Colston*, 130 F.3d at 98-99. In characterizing the issue of "whether Barnhart's conduct was objectively reasonable" as a "legal issue" subject to interlocutory appeal, the majority cited *Mitchell*, *Johnson*, and *Behrens*. *See id.* All of those cited cases deal with the issue of qualified immunity; none of them address in any way the question of whether, on the merits, a defendant official's conduct was "objectively reasonable." Elsewhere, the majority claimed:

> In *Graham v. Connor* the Supreme Court explained that the reasonableness inquiry in an excessive force case is an objective one; evaluating the officer's conduct under the Fourth Amendment we must balance the amount of force used against the need for that force *with reference to clearly established law at the time of the conduct in question.*

*Id*. at 99 (internal citations omitted, emphasis supplied). But the problem with this quotation is that the italicized phrase requiring

---

Fourth Amendment's restrictions on the use of *deadly* force. *See generally **Tennessee v. Garner***, 471 U.S. 1, 105 S. Ct. 1694 (1985).

-24-

reference to clearly-established law does not appear anywhere in the text of **Graham**.[10]

The majority's approach is mistaken not only because it misreads **Behrens**, but more fundamentally because it results in the core substantive issue in a case being reviewed as a collateral order. As discussed *supra*, the **Cohen** doctrine's separability requirement forbids this result. The district court in this case identified two genuine and material issues of fact related to the objective reasonableness of Trooper Barnhart's actions. These factual issues do not preclude evaluating -- as plainly contemplated by **Behrens** -- whether Trooper Barnhart's actions

_____

[10] This is not surprising because **Graham** did not involve any claim of qualified immunity at all, *see* **Graham**, 490 U.S. at 399 n.12, 109 S. Ct. at 1873 n.12, and the case was actually tried before a jury in the district court. Rather, **Graham** concerned the questions of which constitutional provision protects a citizen from excessive force during arrest and how to define the criteria for measuring whether the force used to effect a particular seizure was reasonable or unreasonable under the Fourth Amendment. In this latter regard the Supreme Court in **Graham** held:

> Because "[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical operation," its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.

**Graham**, 490 U.S. at 396, 109 S. Ct. at 1872 (alterations in original, internal citation omitted) (citing **Garner**, 471 U.S. at 8-9, 105 S. Ct. at 1699-1700).

satisfy the "*Harlow* standard of objective legal reasonableness," which is a legal test relating to the legal determination of whether or not the law was clearly established at any given time. But when the proper Supreme Court precedents are utilized, the question of whether a police officer used excessive force in arresting a citizen is a question which cannot be answered without making factual determinations on the basis of the evidence and testimony in the individual case. Which is as it should be. As is suggested by the district court's denial of summary judgment, the factual record simply has not been sufficiently developed to permit judgment as a matter of law. Consequently, the panel majority erred in determining that our Court had interlocutory jurisdiction to address the merits of the ultimate factual dispute as to whether under all of the circumstances Trooper Barnhart's use of deadly force by shooting Colston twice in the back was or was not excessive.

2.      **Behrens v. Pelletier *refers to "a cumbersome review of the record" for the sole purpose of establishing a universe of facts used to answer abstract legal issues related to qualified immunity -- not other merits-bound purposes.***

Another stumbling block in the infamous **Behrens** passage is the now-oft-quoted reference to circumstances, recognized by **Johnson**, in which "a court of appeals may have to undertake a cumbersome review of the record to determine what facts the district court, in the light most favorable to the non-moving party, likely assumed." **Behrens**, 516 U.S. at 313, 116 S. Ct. at 842; **Johnson**, 515 U.S. at 319, 115 S. Ct. at 2159. An examination of the full context of

-26-

this particular sentence from **Johnson** resolves any perceived ambiguities between the language of **Johnson** and the language of **Behrens**.

This **Johnson** sentence was prompted by, and was intended to respond to, the claim that if a district court simply denies the motion for summary judgment without explanation, an appellate court would be unable to determine whether the district court's decision was based upon fact-based issues that may not be immediately appealed or abstract legal issues that may be immediately appealed. *See* **Johnson**, 515 U.S. at 319, 115 S. Ct. at 2159. The Court rejected that claim, stating that the problem was not serious enough to require a rule making fact-based determinations appealable. *See* **id.** The Court then concluded that "[w]hen faced with an argument that the district court mistakenly identified clearly established law, the court of appeals can simply take, as given, the facts that the district court assumed when it denied summary judgment for that (purely legal) reason." **Id.**

Thus **Johnson**, by its own terms, speaks of a "cumbersome review of the record" only in circumstances in which (1) the district court denied summary judgment without indicating its reasons for doing so, (2) there is a "given set of facts," in other words, facts which the parties have stipulated or which are undisputed, and (3) the appellate court is faced with a contention "that the district court mistakenly identified clearly established law."

-27-

None of these circumstances existed in *Johnson*, and none exist here in this case.[11]  *See* *id.*

The language used in *Behrens* was appropriate to the circumstances involved in that case.[12]  The Supreme Court concluded

[11]    It is also important to note that both *Johnson* and Colston's complaint deal with the Fourth Amendment right to be free from unreasonable seizures.  In *Behrens*, on the other hand, the plaintiff asserted that the conduct of the defendant violated his right to procedural due process and deprived him of substantive due process under "clearly established and Constitutionally protected property and liberty rights . . . to specific employment and to pursue his profession free from undue governmental influence." *Behrens*, 516 U.S. at 302, 116 S. Ct. at 837 (internal quotation marks omitted).   In *Behrens*, two of the three circumstances required by *Johnson* were present: the trial court simply denied the motion for summary judgment, and the defendant asserted that his actions had not violated any "clearly established" right of the respondent regarding his employment. *See* *id.* at 304, 116 S. Ct. at 838.

[12]    In *Behrens,* Pelletier complained that Behrens, acting in his capacity as a supervisory agent for the Federal Home Loan Bank Board, had written a letter disapproving Pioneer Savings and Loan Association's request for approval of the hiring of Pelletier as its managing officer.  *Id.* at 302, 116 S. Ct. at 836-37.  As a result of this letter, Pioneer asked Pelletier to resign and when he refused, fired him.  Three years later, Pelletier brought suit in federal court, charging that Behrens's action in writing the letter had effectively discharged him from his post at Pioneer. Pelletier claimed that his discharge, in summary fashion and without notice or opportunity to be heard, violated his right to procedural due process.  *Id*. at 302, 116 S. Ct. at 837.

Thus, *Behrens* presented a serious question as to whether the law was "clearly settled" at the time the letter was written in 1986, such that the author of such a letter could be personally liable for the resulting discharge of respondent.  *Id*.  The trial court denied Behrens's summary judgment motion, implicitly finding that if the facts alleged by Pelletier were established, there could be a violation of clearly established law.  Behrens appealed, arguing that the law was not clearly established.  *Id*.  The court of appeals rejected that argument, finding that it was not before the court.  *Id.* at 304, 116 S. Ct. at 838.  On remand, the district court again denied Behrens's motion for summary judgment on qualified immunity, this time with an "unadorned" statement that material issues of fact precluded summary judgment.  *Id*.  When Behrens tried to appeal again, the Ninth Circuit declined to

that the issue of whether the law was "clearly established" needed to be addressed[13] -- a "legal issue" which **Johnson** recognized as being typically appealable. *See **Johnson***, 515 U.S. at 311, 115 S. Ct. at 2155 (citing **Mitchell**, 472 U.S. at 530, 105 S. Ct. at 2817). It is, therefore, inappropriate to conclude that **Behrens** in any way overrides the Supreme Court's clear statement of the law in **Johnson**, or that **Johnson** should not control our disposition in this case. The "cumbersome review of the record" contemplated by **Johnson** and **Behrens** is conducted for the limited purpose of establishing a set of facts (sufficiently supported by the evidence for the purposes of summary judgment) that are then used to answer the abstract legal question of whether the plaintiff has alleged a violation of clearly-established law. **Behrens** authorizes nothing more. It is therefore patent error for the panel majority in this case to construe **Behrens** as an implicit exception to the strictures of the collateral-order doctrine.

3. ***Thus, the panel majority fundamentally misapplied** Behrens v. Pelletier **in assuming appellate jurisdiction to determine the objective reasonableness of Trooper Barnhart's actions.***

In exercising appellate jurisdiction, the panel majority misconstrued **Behrens** in two key respects. First, **Behrens**'s

___

address the issue because of its rule prohibiting more than one appeal on qualified immunity issues. ***Id.***

[13]  The Ninth Circuit's opinion on remand from the Supreme Court confirms that there was no basis for holding that Behrens's conduct deprived Pelletier of any clearly established liberty or property interest in specific employment at the time of writing the letter. *See **Behrens v. Pelletier***, 130 F.3d 429 (9th Cir. 1997), *modified on reh'g*, 145 F.3d 1084 (9th Cir. 1998).

-29-

reference to the "*Harlow* standard of 'objective legal reasonableness,'" *Behrens*, 516 U.S. at 313, 116 S. Ct. at 842, must be construed in a fashion consistent with *Harlow* itself. It cannot be used to reach any other aspect of the case unrelated to qualified immunity which the appellate court may wish to review. There is no appellate jurisdiction to entertain an interlocutory appeal that presents issues which are inextricably intertwined with the merits of the plaintiff's complaint, for to do so would violate the collateral-order doctrine's separability requirement. Second, *Behrens* does not broadly authorize courts of appeals to conduct de novo reviews of the record in interlocutory qualified-immunity appeals. Instead, the "cumbersome review of the record" contemplated by *Johnson* and *Pelletier* refers only to the limited review required to decide the distinct legal question of whether the conduct alleged by the plaintiff violated then-clearly-established law.

Because the "objective reasonableness" of the force applied by Trooper Barnhart to arrest Colston is not an issue separable from the merits of Colston's complaint, it is not separable from the merits and is therefore not subject to interlocutory appeal. The majority erred by applying *Behrens* to achieve a contrary result.

## II.

The new theory proffered by the panel majority as to how this Court has appellate jurisdiction is simple -- perhaps even deceptively simple. It postulates that the decision of the

district court to deny summary judgment because "a genuine issue of material fact exists" involves two fundamental decisions by the district court: (1) there is sufficient conflict in the factual testimony that a jury could find that the force used by Trooper Barnhart was excessive, or, that the force used by Trooper Barnhart was reasonable; and (2) the issue of whether the force used was excessive or unreasonable is a material issue in the case. The first of these issues is obviously factual and the second issue is essentially legal in nature. Therefore, according to the majority's expanded theory, when the district court ruled that "a genuine issue of material fact exists," it necessarily made a "legal" ruling which, under the majority's analysis of **Johnson** and **Behrens**, authorizes us to exercise appellate jurisdiction.

I acknowledge that this theory is simple, but in my view it is simply wrong.

The panel majority's use of the genuineness-or-materiality distinction is simply not a useful theory of appealability. The trouble is that the analysis makes every denial of summary judgment appealable. Such an interpretation of **Behrens** entirely swallows the rule in **Johnson**, and is therefore unacceptable.

When ruling on a motion for summary judgment, a district court must consider the materiality of the factual disputes before the court. *See* FED. R. CIV. P. 56(c). If the district court concludes that the only genuinely disputed facts are not material, the district court would grant summary judgment, and that would be an appealable final decision. But what happens when a motion for

summary judgment is denied?  According to the panel majority, **Behrens** established that "an appellate court is free to review a district court's determination that the issues of fact in question are material."  Order on Reh'g, *supra*, at 4.  If that is the case, every single denial of summary judgment is appealable because every single denial of summary judgment embodies a "determination that the issues of fact in question are material."  *See* FED. R. CIV. P. 56(c).  To reiterate, if the issues of fact were not material, summary judgment would have been granted, not denied.

Obviously this is not what **Behrens** intended.  The fact of the matter is that **Behrens** does not say that "an appellate court is free to review a district court's determination that the issues of fact in question are material," a cold fact belied by the panel majority's failure to provide a citation to **Behrens** or any other case to support this assertion.  *See* Order on Reh'g, *supra*, at 4. Quite to the contrary of the panel majority's view, **Behrens** does not give the courts of appeals carte blanche to investigate whether or not the fact issues that precluded a grant of summary judgment were material.  What **Behrens** does say is that "summary judgment determinations *are* appealable when they resolve a dispute concerning an 'abstract issu[e] of law' relating to qualified immunity -- typically, the issue whether the federal right allegedly infringed was 'clearly established.'"  **Behrens**, 516 U.S. at 313, 116 S. Ct. at 842 (emphasis and alterations in original, internal citations omitted).  The reference to the appealable "abstract issu[e] of law" is an attributed quote from **Johnson**, an

-32-

opinion which makes unmistakably clear that the separability of the issue is an indispensable prerequisite to interlocutory appeal. *See Johnson*, 515 U.S. at 310-11, 115 S. Ct. at 2155.

Thus, as fully discussed *supra*, the panel majority's *Johnson*-swallowing interpretation of *Behrens* does not withstand scrutiny. No Supreme Court cases have been cited to support the primacy of the genuineness-materiality distinction. That is because there are none. The proper distinction as explained in both *Johnson* and *Behrens* is between appealable legal determinations and nonappealable determinations of evidence sufficiency. The partial congruence that exists because genuineness relates to factual disputes while materiality relates to the legal significance of facts does not supplant the controlling dichotomy, which is between law-based decisions and fact-based decisions. Moreover, the fact that there is a dispute about materiality tells us absolutely nothing about the separability of that legal dispute, which was the key factor in the *Johnson* Court's determination that the district court's resolutions about the sufficiency of the evidence for the purposes of qualified immunity are inseparable from the merits and therefore are not subject to interlocutory appeal. *See id.* at 313-18, 115 S. Ct. at 2156-58. The Supreme Court has made it abundantly clear that the appropriate focus in determining our appellate jurisdiction in interlocutory qualified-immunity appeals is the "appropriate interpretation of § 1291." *Johnson v. Fankell*, 117 S. Ct. 1800, 1807 (1997). Genuineness and materiality are merely incidental; they are not a controlling part of that picture.

-33-

Instead of trying to understand the nuances that differentiate *Johnson* and *Behrens*, the panel majority's approach simply seeks to articulate a theory to justify jurisdiction. Their approach, as explained in the new opinion on denial of rehearing, ensures that unless the district court satisfies an undefined and therefore wholly arbitrary standard of specificity,[14] there will always be grounds for the appellate court to conduct a roving review of the record to investigate possible grounds for appellate jurisdiction. And, once that step has been taken, the grounds for exercising appellate jurisdiction can be easily manufactured.[15] The majority

---

[14] I pause here to note not only that the district court stated the grounds for denying summary judgment with all due specificity for the purposes of our determining appellate jurisdiction, but also that the panel majority knew full well what factual disputes led the district court to this decision.

The district court's Memorandum and Order stated that the court was denying Trooper Barnhart's motion for summary judgment because it found "that issues of material fact exist which preclude summary judgment." The court further stated:

> Among these factual disputes are what information Trooper Barnhart possessed immediately prior to and at the moment he fired the three shots at the fleeing suspect and whether Officer Barnhart had a reasonable belief of danger from the fleeing suspect which would justify the use of deadly force in self-defense.

The majority actually contends that this statement "lacked sufficient specificity to permit us to determine whether we had jurisdiction over Barnhart's appeal." Order on Reh'g, *supra*, at 7.

[15] This very case is a beautiful example. The majority states in amazingly conclusory fashion:

> [B]ecause we determined that Barnhart's version of the facts

-34-

transforms *Behrens*'s reference to a "cumbersome review of the record" into an invitation to review de novo the record in all interlocutory qualified-immunity appeals. This is a transparent device for creating appellate jurisdiction at the discretion of the appellate court, and it is entirely inconsistent with the reasons the Supreme Court gave for its decisions in *Johnson* and *Behrens.*

## III.

Finally, I must register my fundamental disagreement with the panel majority's general approach to implementing the policies which support qualified immunity. I support the application of those important and necessary policies to the extent that we maintain fidelity to the numerous Supreme Court opinions on the subject. I cannot support, however, our Court's steady development of a reflexive habit of substituting appellate judgment for that of the district courts on interlocutory matters in the name of protecting public officials from the burdens of litigation. As the Supreme Court has made abundantly plain, qualified immunity in and

---

> mirrored the version of the facts that we determined the district court likely assumed, we concluded that Barnhart was properly challenging the materiality of the factual issues the district court believed in dispute and that we therefore possessed jurisdiction over this appeal.

*Id*. at 8. Considering the fact that the district court denied summary judgment, the majority's statement that "that Barnhart's version of the facts mirrored the version of the facts that we determined the district court likely assumed" is simply incredible.

-35-

of itself is a substantial concession to the needs of faithful and efficient execution of public duties.  It is not, therefore, necessary or appropriate to contort ancillary legal doctrines (such as the original panel opinion's misapplication of the collateral-order doctrine) for the purpose of terminating litigation early when, in the judgment of the district court, genuine factual issues remain that merit further consideration.

**A.**  ***Qualified immunity is an important policy goal which already embodies substantial deference to public officials.***

The Supreme Court has recently revisited and reaffirmed the policy goals which undergird the doctrine of qualified immunity. The first of these goals is "a strong public interest in protecting public officials from the costs associated with the defense of damages actions." ***Crawford-El***, 118 S. Ct. at 1592-93; *see* ***Harlow***, 457 U.S. at 814, 102 S. Ct. at 2736.  In addition, we are concerned that legal process not be used to manipulate public officials through "allegations of subjective motivation [which] might have been used to shield baseless lawsuits from summary judgment," so we apply an objective standard based on the state of the law at the time of the alleged conduct ***Crawford-El***, 118 S. Ct. at 1593; *see* ***Harlow***, 457 U.S. at 817-18, 102 S. Ct. at 2737-38.  Last, we seek to avoid "the unfairness of imposing liability on a defendant who 'could not reasonably be expected to anticipate subsequent legal developments, nor . . . fairly be said to "know" that the law forbade conduct not previously identified as unlawful.'" ***Crawford-El***, 118 S. Ct. at 1593 (quoting ***Harlow***, 457 U.S. at 818, 102 S. Ct.

at 2738); *see* **Scheuer v. Rhodes**, 416 U.S. 232, 239–40, 94 S. Ct. 1683, 1688 (1974).

The parameters of the qualified-immunity defense have been carefully laid out by the Supreme Court, and they represent the full extent to which a court accommodate the above-mentioned policy interests. *See, e.g.*, **Imbler v. Pachtman**, 424 U.S. 409, 421, 96 S. Ct. 984, 990 (1976).

**B.** *The substantial policy interest in adjudicating Colston's claims cannot be ignored.*

Despite our real concern about the policy interests protected by qualified immunity, we cannot forget that our fellow citizens also have a legitimate interest in vindicating their rights as provided by law. Congress has provided by statute that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. Qualified immunity is intended to extinguish some legitimate claims arising under § 1983 which are frivolous or ambiguous in nature, and that is a recognized and accepted consequence of applying the doctrine. But in a case where the plaintiff has alleged a violation of his then-clearly-established constitutional rights and claims serious and demonstrable damages from the official's conduct which was not objectively reasonable, the plaintiff should be entitled to proceed to trial so long as the

-37-

allegations are sufficiently supported by evidence to survive a motion for summary judgment. "[I]t is not unfair to hold liable the official who knows or should know he is acting outside the law." *Butz v. Economou*, 438 U.S. 478, 506, 98 S. Ct. 2894, 2911 (1978).

**C.    *The majority erred by tipping the scales of justice in Trooper Barnhart's favor.***

The primary lesson of the recently decided case of *Crawford-El v. Britton*, 118 S. Ct. 1584 (1998), is that the courts of appeals should not go beyond the basic qualified-immunity framework to deprive plaintiffs of their "day in court." *Crawford-El* contains a number of observations which should inform the way we proceed in a case like this one. For example, the Supreme Court noted that the "holding in *Harlow*, which related only to the scope of an affirmative defense, provides no support for making any change in the nature of the plaintiff's burden of proving a constitutional violation." *Crawford-El*, 118 S. Ct. at 1592. The Supreme Court is telling us that the policies that give rise to the affirmative defense of qualified immunity do not stretch so far as to justify stacking the deck against the substance of the plaintiff's underlying claims. The panel majority's erroneous interpretation in this litigation in Trooper Barnhart's favor are functionally indistinguishable from the D.C. Circuit's now-disapproved practice of requiring "'clear and convincing evidence on the state-of-mind issue at summary judgment.'" *Id.* at 1589 (quoting *Crawford-El v. Britton*, 93 F.3d 813, 815 (D.C. Cir. 1996) (en banc)).

-38-

The Supreme Court also strained to point out that there is no reason for the courts of appeals to "deal under the table" in order to impede lawsuits against public officials. The Court has endorsed "firm application of the Federal Rules of Civil Procedure" which "may lead to the prompt disposition of insubstantial claims," *id.*, 118 S. Ct. at 1596 (internal quotation marks omitted), and went to great lengths to detail procedural barriers that the district courts should use to dispose of insubstantial claims, *see id.* at 1596-98.

Perhaps most importantly, the Court reiterated that a claim which may have merit should be heard unless the plaintiff fails to survive a fair application of qualified-immunity analysis.

> [Qualified immunity's] rationale of fairness does not provide any justification for the imposition of special burdens on plaintiffs who allege misconduct that was plainly unlawful when it occurred. While there is obvious unfairness in imposing liability -- indeed, even in compelling the defendant to bear the burdens of discovery and trial -- for engaging in conduct that was objectively reasonable when it occurred, no such unfairness can be attributed to holding one accountable for actions that she knew, or should have known, violated the constitutional rights of the plaintiff. **Harlow** itself said as much: "If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct." **Id.**, at 818-819; *see also* **Butz**, 438 U.S. at 506 ("[I]t is not unfair to hold liable the official who knows or should know he is acting outside the law . . . .").

*Crawford-El*, 118 S. Ct. at 1593.

If this case had proceeded as usual and gone to trial, it is possible that Colston might left the courthouse with empty pockets.

He was, however, entitled under the evidence available at summary judgment to step to the bar and take his fair chances.

Colston's claim was not insubstantial. The right which he alleges was violated -- the right to be free from police brutality -- is one of our civil rights which is of most vital concern to significant portions of our population. The alleged violation of his rights resulted in serious and permanent injuries. Colston has alleged facts which would support a jury finding that Trooper Barnhart improperly used deadly force to accomplish his seizure. The law, as clarified in **Crawford-El**, is plain; our Court should not have intervened when Trooper Barnhart's motion for summary judgment was denied on the basis that the facts were not sufficiently established to justify summary judgment.

## IV.

For the foregoing reasons, and with all due respect to my colleagues, I dissent from the panel majority's additional opinion on rehearing, and I dissent from our Court's denial of rehearing en banc.

ENDRECORD

-40-

BENAVIDES, Circuit Judge, with whom POLITZ, Chief Judge, STEWART and PARKER, Circuit Judges, dissenting from the denial of rehearing en banc:

The central issue in this qualified immunity case is the important question of the proper scope of a court of appeals' review of the summary judgment record in a case where a district court has failed to identify the genuine issues of material fact precluding summary judgment. The *Colston* majority asserts that a court of appeals may review *de novo* a district court's determination that the plaintiff's evidence creates a genuine factual dispute in order to preserve a public official's right to an immediate appeal on the question of qualified immunity. After substituting its genuineness analysis for that of the district court, the majority concludes that Barnhart is entitled to qualified immunity because his effectively uncontested subjective account of the events preceding the shooting indicates that he acted with objective legal reasonableness when he shot Colston twice in the back.

In contrast, I believe that the majority's *de novo* review of the sufficiency of Colston's evidence conflicts with the Supreme Court's decision in *Johnson v. Jones*, 115 S. Ct. 2151 (1995), and the collateral order doctrine. The majority, moreover, could have respected the limits on this court's jurisdiction over interlocutory appeals and protected Barnhart's right to an immediate appeal by deciding the question of qualified immunity on the basis of the version of the facts contained in Colston's response to Barnhart's motion for summary judgment or by remanding the case to the district court for a complete statement of the genuine issues of material fact precluding summary judgment. Had the majority adopted either of these alternatives to an independent review of the summary judgment record, it would not have reversed the district court. I, therefore, respectfully dissent from the denial of rehearing en banc.

I.

In its explanation of the basis for the court's jurisdiction over Barnhart's interlocutory appeal, the *Colston* majority correctly interprets the Supreme Court's decisions in *Jones* and *Behrens v. Pelletier*, 116 S. Ct. 834 (1996), to permit this court to exercise jurisdiction over an interlocutory appeal contending that the factual disputes identified by a district court in its order denying a

defendant's motion for summary judgment on the basis of qualified immunity are *immaterial* to a determination of whether a plaintiff's constitutional rights were violated or whether a defendant's conduct was objectively reasonable in light of clearly established law.[16]  In other words, we may consider on interlocutory appeal a defendant's claim that when the facts, both disputed and undisputed, are viewed in the light most favorable to the plaintiff, they demonstrate that the defendant is entitled to qualified immunity.  *See Hart v. O'Brien*, 127 F.3d 424, 455 (5th Cir. 1997) (Benavides, J., dissenting).  The majority also rightly recognizes that a court of appeals must adopt the district court's articulation of the genuinely disputed facts when determining whether these disputes are material to a finding of qualified immunity.[17]  Finally, the majority properly concludes that when a district court has "not identif[ied] those factual issues as to which it believes genuine disputes remain" and a defendant is claiming on interlocutory appeal that the factual disputes in the case are immaterial to a finding of qualified immunity, *Jones* and *Behrens* authorize us to review the summary judgment record in order to identify "what issues of fact the district court probably considered genuine" when denying the defendant's motion for summary judgment so that we may in turn determine if those disputes are material.  This much is clear from the Supreme Court's statement that under these

---

[16]  *See Behrens,* 116 S. Ct. at 842 ("Johnson permits [a defendant] to claim on appeal that [the factual disputes identified by the district court are immaterial because] all of the conduct which the District Court deemed sufficiently supported for purposes of summary judgment met the Harlow standard of `objective legal reasonableness.'"); *Jones*, 115 S. Ct. at 2159 (holding that a court of appeals may review on interlocutory appeal a district court's determination "that a given set of facts violates clearly established law"); *Collins v. Jordan*, 110 F.3d 1363, 1370 (9th Cir. 1997) ("An appellate court still has jurisdiction to consider a defendant's assertion that the dispute of fact is not material. Such a claim is of a different character from a claim that the [district] court's findings are not supported by the record.  The claim of lack of materiality is solely one of law, and therefore is reviewable on an interlocutory basis.") (citations omitted); *Dickerson v. McClellan*, 101 F.3d 1151, 1157 (6th Cir. 1996) (noting that a court of appeals may "exercise interlocutory jurisdiction" over an appeal from a denial of summary judgment in a qualified immunity case when "the factual disputes" identified by the district court are "immaterial").

[17] *See Behrens*, 116 S. Ct. at 842 (noting that a court of appeals considers "the conduct which the District Court deemed sufficiently supported for purposes of summary judgment" when deciding materiality); *Jones*, 115 S. Ct. at 2159 ("When faced with the argument that the district court mistakenly identified clearly established law, the court of appeals can simply take, as given, the facts that the district court assumed when it denied summary judgment.").

circumstances, a court of appeals "'may have to undertake a cumbersome review of the record to determine what facts the district court, in the light most favorable to the nonmoving party, likely assumed'" to be sufficiently supported when it denied summary judgment. *Behrens*, 116 S. Ct. at 842 (quoting *Jones*, 115 S. Ct. at 2159).

## II.

The *Colston* majority and I part company, however, when it describes the manner in which we are to review the summary judgment record when identifying the factual disputes likely viewed as genuine by the district court. According to the majority, *Behrens* permits a court of appeals to "go behind" a district court's determination that genuine issues of material fact preclude summary judgment when we are evaluating whether the unstated facts that the court "likely assumed" are material to a finding of qualified immunity. Although the *Colston* majority is careful not to explain what it means to "go behind" a district court's determination and "conduct an analysis of the summary judgment record," its opinion illustrates that a court of appeals may disregard its obligation to reconstruct the version of the facts that best explains the district court's decision to deny he defendant's motion for summary judgment when going behind that determination. In fact, the majority's decision to "adopt Barnhart's version of the facts" demonstrates that going behind a district court's determination entails conducting a *de novo* review of the district court's finding that the plaintiff's evidence was sufficient to create a genuine issue of material fact. The majority's conception of the scope of our review of the summary judgment record in a case like *Colston*, however, cannot be reconciled with the Supreme Court's decision in *Jones* or the collateral order doctrine.

The summary judgment record in *Colston* indicates that Barnhart and Colston provided plausible and conflicting accounts of the tenor and significance of the events captured on film by the camera mounted in Barnhart's patrol car. According to Barnhart, for example, Colston's effort to stand up in the face of a command to get on the ground was an aggressive and threatening act. Colston, on the other hand, draws attention to the fact that he was a young black man ordered to the

ground by a white police officer in connection with a traffic stop that occurred at night on an empty highway. Colston explains that he lifted his leg in preparation to flee because he was noticeably frightened by the officers and what he perceived to be their impending use of force.

The parties also offer conflicting accounts of the most critical point in the encounter: The moment when Barnhart fired two shots into Colston's back. Barnhart contends that it was not feasible for him to warn Colston before firing these shots because he "had to immediately decide whether to shoot." *Id.* at 100. According to Barnhart's motion for summary judgment, he decided to shoot because he was "dazed and disoriented" and he "perceived [Colston] to be in the process of attacking him" or "hovering above" him.

The videotape, however, clearly shows that Colston was not in the process of attacking either officer at the time he was shot twice in the back. Instead, as being shot in the back indicates, Colston was running away. Colston contends that his observable demeanor indicated that he was in fact fleeing at this point because he had been visibly frightened, had not placed himself in a position to strike the officers after knocking them down, and had not attempted to disarm or strike the officers while they were lying "dazed," "limp," and "motionless" on the ground. *See Colston v. Barnhart*, 130 F.3d 96, 99 (5th Cir. 1997). As for Barnhart's suggestion that his dazed and disoriented state contributed to his misperception that Colston was moving toward him, the record indicates that he was nonetheless able to see Colston clearly enough to get "a good target acquisition" before firing. Further, as Judge DeMoss stated in his dissent from the panel opinion, Barnhart's account of the extent of his incapacity may be more hyperbole than fact. *See id.* at 103 (DeMoss, J., dissenting). Thus, to justify Barnhart's decision to shoot Colston without warning on the basis of his possibly unreasonable assumption that Colston was advancing upon him, the majority puts forth an explanation of the shooting that Barnhart did not even raise in his motion for summary judgment: That when Barnhart fired the final two shots, Colston was running toward the "patrol car, where Barnhart's shotgun was located" and was, presumably, accessible. *Id.* Of course, Barnhart did not raise this

justification for the shooting because it completely contradicts his admission in his motion for summary judgment that he shot Colston because he perceived Colston to be moving toward him.

Even if Barnhart did in fact perceive Colston to be heading for the patrol car, there is no evidence that Colston knew of the shotgun. In fact, we do not know whether the shotgun was loaded or how readily Colston could have retrieved it from the police cruiser. Moreover, the shotgun could not have been visible to Colston from the front of the patrol car because it was dark and the car lights were shining in his eyes. Further, Colston had proceeded only "two steps . . . toward Barnhart's patrol car" when he was shot. *Id.* Under these circumstances, Colston suggests that Barnhart, even if he was in fact concerned about Colston's access to the shotgun, had ample time to issue a warning before firing the last two shots.

Notwithstanding these conflicting versions of the events preceding shooting, the majority states that it adopted Barnhart's "version of the facts" because they "mirrored the version of the facts that we determined the district court likely assumed" when denying Barnhart's motion for summary judgment. Why the district court would have adopted a version of the events not argued by Barnhart, only to deny his motion for summary judgment, is unclear. More importantly, there can be no question that when the district court denied Barnhart's motion for summary judgment because "genuine issues of fact [exist] as to `what information Trooper Barnhart possessed immediately prior to and at the moment he fired the three shots at [Colston],'" it necessarily found that Colston's version of the encounter conflicted with Barnhart's and that Colston's account was sufficiently supported by the summary judgment evidence. Thus, by ignoring Colston's account of the encounter and replacing it with the version of the events preceding the shooting that is most favorable to Barnhart's qualified immunity claim, the majority, contrary to the Supreme Court's instruction in *Jones*, in fact rejected the version of the "facts the district court, in the light most favorable to the nonmoving party, likely assumed" when *denying Barnhart's* motion for summary judgment. 115 S. Ct. at 2159.

Moreover, the process by which the majority inexplicably concluded that the district court adopted Barnhart's version of the facts when denying his motion for summary judgment also cannot be squared with the Supreme Court's decision in *Jones* or the collateral order doctrine. In *Jones*, the Court unequivocally held that "a defendant, entitled to invoke a qualified-immunity defense, may not appeal a district court's summary judgment order insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial" because the collateral order doctrine precludes jurisdiction over an interlocutory appeal raising a question, such as "evidence sufficiency" that is not "significantly different from the fact-related legal issues that likely underlie [a] plaintiff's claim on the merits." *Id.* at 2157, 2159. Nonetheless, in order to adopt the version of the events preceding the shooting that the majority believes Barnhart should have identified as the factual basis for his materiality challenge, it had to go beyond the version of events contained in Barnhart's motion for summary judgment, substitute its own genuineness analysis for that of the district court, and conclude that Colston produced insufficient evidence calling into question the objective reasonableness of Barnhart's decision to shoot him twice in the back. A district court's failure to identify the genuinely disputed facts, however, does not transform the question of evidence sufficiency into an issue that is separable from the merits of a plaintiff's claim and that is within this court's jurisdiction on interlocutory appeal.

According to the majority, this conflict between its *de novo* review of the sufficiency of Colston's evidence and the Court's decision in *Jones* and collateral order doctrine is authorized by the Supreme Court's decision in *Behrens*. The *Behrens* opinion, however, does not purport to create an exception to the collateral order doctrine's separability requirement. Likewise, as the *Colston* majority recognizes, the opinion in *Behrens* does not expressly state that a court of appeals may review a district court's genuineness determination and substitute its view of the summary judgment evidence for that of the district court in a case where the district court has "not identif[ied] the particular charged conduct that it deemed adequately supported for the purposes of summary judgment." Instead, the Court in *Behrens* simply reiterated its position in *Jones* that under these

circumstances, a court of appeals "'may have to undertake a cumbersome review of the record to determine what facts the district court, in the light most favorable to the nonmoving party, likely assumed.'" *Behrens*, 116 S. Ct. at 842 (quoting *Jones*, 115 S. Ct. at 2159). The majority's interpretation of *Behrens*, therefore, is ultimately predicated on its view that a court of appeals may review *de novo* a district court's genuineness determination on interlocutory appeal because there is no better way "to ensure that the defendant's right to an immediate appeal on the issue of materiality is not defeated solely on account of the district court's failure to articulate its reasons for denying summary judgment."

Like the majority's independent review of the sufficiency of Colston's evidence, this policy argument also conflicts with the Supreme Court's decision in *Jones*. In that case, the petitioner claimed that a court of appeals should be permitted to review the sufficiency of a plaintiff's evidence on interlocutory appeal because "the need to protect officials against the burdens of further pretrial proceedings and trial justifies a relaxation of the separability requirement." *Jones*, 115 S. Ct. at 2157 (quotations omitted). The Supreme Court, however, rejected this claim. Emphasizing jurisdiction over expedience, *cf. Steel Co. v. Citizens for a Better Env't*, 118 S. Ct. 1003, 1011-16 (1998) (holding that a court of appeals may not assume that a plaintiff has standing in order to reach the merits of that plaintiff's claim), the Court stated that allowing a court of appeals to review the sufficiency of a plaintiff's evidence on interlocutory appeal "would more than relax the [collateral order doctrine's] separability requirement—it would in many cases simply abandon it." *Jones*, 115 S. Ct. at 2157. Thus, the majority's policy rationale for its interpretation of *Behrens* sharpens, rather than alleviates, the conflict between its *de novo* review of the district court's genuineness determination and the Supreme Court's holding in *Jones*.

### III.

The majority's policy rationale for its *de novo* review of the sufficiency of Colston's evidence also reflects an incorrect understanding of the proper balance between the policies underlying qualified immunity and the limits on our jurisdiction over interlocutory appeals. Contrary to the

majority's suggestion, a *de novo* review of a district court's genuineness determination was not necessary to ensure Barnhart's right to an immediate appeal on the question of qualified immunity. Instead, the majority could have overcome the district court's incomplete order denying summary judgment and fully protected Barnhart's right to an interlocutory appeal by adopting of the version of events contained in Colston's response to Barnhart's motion for summary judgment or remanding the case to the district court for a complete statement of the genuine issues of material fact. Each of these alternatives to the handling of this appeal, moreover, would have been entirely consistent with the collateral order doctrine and the language and analysis in *Jones* and *Behrens.* The majority, therefore, did not have to interpret *Behrens* as conflicting with the collateral order doctrine and the Court's unanimous decision in *Jones* in order to properly dispose of this appeal.

To exercise its jurisdiction over an interlocutory appeal from an incomplete order denying summary judgment in a manner that is consistent with *Jones* and the collateral order doctrine, a court of appeals should "determine what facts the district court, in the light most favorable to the nonmoving party, likely assumed" when *denying* a defendant's motion for summary judgment by first comparing that defendant's motion for summary judgment and the plaintiff's response in order to identify the disputed issues of fact.[18] By assuming that the plaintiff's version of these factual disputes is sufficiently supported by the summary judgment evidence, a court of appeals best complies with its obligation under *Jones* to adopt the version of the facts, "in the light most favorable to the nonmoving party," that the district court most "likely assumed" when it denied the defendant's motion for summary judgment. *Jones*, 115 S. Ct. at 2159. Moreover, by utilizing the plaintiff's

---

[18] As the Supreme Court has suggested, our review of the summary judgment record may become "cumbersome" if a defendant's motion for summary judgment and the plaintiff's response do not sufficiently highlight the factual disputes in a case. *See Jones*, 115 S. Ct. at 2159. In that event, a court of appeals may be forced to examine the parties' exhibits, the complaint, and the answer in order to identify the plaintiff's version of the factual disputes that it will assume to be genuine for the purposes of its materiality analysis. Of course, this "detailed evidence-based review of the record," *id.*, increases the risk that the collateral order doctrine's separability requirement will be relaxed, if not abandoned, in an effort to hasten the resolution of a qualified immunity case. A remand to the district court for a complete statement of the genuine issues of material fact precluding summary judgment, however, would eliminate this risk of relaxing or abandoning the separability requirement in such a case without sacrificing a public official's right to an immediate appeal. *See infra.*

version of the facts when determining whether the factual disputes between the parties are material to a finding of qualified immunity, a court of appeals preserves the collateral order doctrine's separability requirement and the defendant's right to an interlocutory appeal on the issue of qualified immunity.[19]

Had the majority in *Colston* properly restricted its review of the summary judgment record, it would have determined that the factual dispute as to whether Colston was running away or whether he posed an immediate threat of death or serious bodily harm to the officers at the time he was shot twice in the back was material to a finding that Barnhart was entitled to qualified immunity.[20] Once the version of the events preceding the shooting contained in Colston's response to Barnhart's motion for summary judgment is assumed to be sufficiently supported by the evidence, it is clear that the district court correctly determined that Barnhart was not entitled to summary judgment based on the objective reasonableness of his actions. Under Colston's characterization of the shooting, a reasonable police officer in Barnhart's position at the time of the shooting would not have shot Colston twice in the back without warning because that officer would have perceived that Colston was running away. Moreover, even if the majority correctly credits Barnhart with the unclaimed subjective intent of shooting Colston because he perceived Colston to be running toward the patrol car, a reasonable officer would not have shot Colston in the back until Colston had taken additional action indicating an intent to gain access to the shotgun in the police cruiser in the face of a warning to move away from the car. The factual disputes between Colston and Barnhart, therefore, are material to a finding of qualified immunity and the *Colston* majority should have affirmed the district

---

[19] *Cf. Jones*, 115 S. Ct. at 2159 (noting that a court of appeals avoids entangling itself in the merits of a plaintiff's case and causing a corresponding relaxation of the separability requirement by "simply tak[ing], as given, the facts that the district court assumed when it denied summary judgment"); *Hammond v. Kunard*, No. 96-2343, 1998 WL 305187, at *3 (7th Cir. June 11, 1998) ("[In] a motion to dismiss, we assume that all of the facts of the complaint are true, rendering the applicability of qualified . . . immunity a purely legal question over which we have jurisdiction.").

[20] Of course, had the majority adopted these principles, it would not have reviewed the sufficiency of Colston's evidence or inexplicably concluded that the district court likely assumed the version of the facts most favorable to Barnhart when denying his motion for summary judgment.

49

court's denial of Barnhart's motion for summary judgment. *Cf. Dickerson*, 101 F.2d at 1164 (dismissing a defendant's interlocutory appeal for lack of jurisdiction after determining that the factual disputes between the parties were material to a finding that the defendant was entitled to qualified immunity on the plaintiff's excessive force claim); *Clash v. Beatty*, 77 F.3d 1045, 1049 (7th Cir. 1996) (dismissing a defendant's interlocutory appeal for lack of jurisdiction when the record was insufficiently developed for the court of appeals to determine whether the disputes between the parties were material to a finding that the defendant was entitled to qualified immunity on the plaintiff's excessive force claim).[21]

In the alternative, even though a cumbersome review of the record is not necessary to identify the version of the facts supporting the district court's decision to deny Barnhart's motion for summary judgment, the majority should have remanded this case to the district court for a sufficiently specific statement of the genuine issues of material fact precluding summary judgment.[22] In fact, this

___

[21] This is not to say that Barnhart may not ultimately prevail on his claim that he acted with objective legal reasonableness under the circumstances. Colston's version of the encounter, however, indicates that the determination of whether Barnhart acted with objective legal reasonableness belongs to a jury. When confronted with the testimony of both Barnhart and Colston, a jury may ultimately conclude that a reasonable officer, when standing in Barnhart's shoes, would have also shot Colston twice in the back without warning. *Cf. Snyder v. Trepagnier*, No. 96-30935, 1998 WL 268280, at *7-9 (5th Cir. May 27, 1998) (affirming a jury verdict that awarded the defendant qualified immunity for his decision to shoot the plaintiff in the back after the district court had properly denied summary judgment on qualified immunity grounds because there was a genuine dispute of material fact as to whether the plaintiff had a gun or the defendant reasonably believed that he did).

[22] *Cf. Crutcher v. Kentucky*, 883 F.2d 502, 503 (6th Cir. 1989) ("The district Court's denial of Owens' motion stated only that genuine issues of material fact remained for resolution at trial. . . . We vacate the District Court's ruling on the qualified immunity issue and remand this case to the District Court so that it can state its reasons for concluding that there was no genuine dispute about any fact material to whether Owens violated clearly established constitutional rights."); *Poe v. Haydon*, 853 F.2d 418, 426-27 (6th Cir. 1988) ("Although this court could conduct its own examination of the record and determine if there is a genuine dispute about any fact material to whether appellants violated any clearly established constitutional or statutory rights, we decline to do so."); *Whitt v. Smith*, 832 F.2d 451, 453-54 (7th Cir. 1987) ("No particular factual issues were identified in the district court's order . . . and [w]e will not attempt the factual analysis to determine whether qualified immunity is applicable at this stage of the proceedings. We therefore . . . remand the case to the district court."); *Green v. Carlson*, 826 F.2d 647, 652 (7th Cir. 1987) ("The appellants contend that . . . this court should conduct its own examination of the record and decide . . . whether the appellants violated any clearly established constitutional or statutory rights. However, in light of the complexity of this case, and the district court's finding that numerous [but unstated] disputed issues of fact remain, we

approach might have struck an even better balance between the goals of qualified immunity and the limits on our jurisdiction over interlocutory appeals than a limited review of the parties' competing summary judgment filings.[23] A proper remand in this case would have protected Barnhart from any additional "burdens of litigation," *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985), by staying the proceedings in the district court, if necessary, until that court had sufficiently identified the genuine issues of material fact precluding summary judgment and this court had reached a decision on the merits of Barnhart's subsequent interlocutory appeal. In addition, this disposition would have precluded any potential relaxation of the separability requirement.

Indeed, even if the majority correctly interprets *Behrens* to create an exception to *Jones* and the collateral order doctrine that authorizes a court of appeals to conduct a *de novo* review of the sufficiency of a plaintiff's evidence simply because a district court has failed to identify the genuine issues of material fact precluding summary judgment,[24] this case should have been remanded.[25] There

---

decline to reach the merits of the defendants' qualified immunity claim. Instead, we remand the case for [additional] finding[s].")

[23] A remand in this case would also promote judicial economy. As the Supreme Court has noted, "considerations of delay, comparative expertise of trial and appellate courts, and wise use of judicial resources, argue in favor of limiting interlocutory appeals of 'qualified immunity' matters to cases presenting more abstract issues of law." *Jones*, 115 S. Ct. at 2158. Every effort we make to identify a plaintiff's version of the disputed issues of fact, however, makes the qualified immunity determination less of a pure question of law. That a remand would entail additional district court action, moreover, does not undercut its usefulness in furthering judicial economy. Instead, it reflects the district court's comparative advantage in identifying the version of the facts precluding a grant of summary judgment. Further, a rule requiring remands of interlocutory appeals from insufficiently specific orders denying summary judgment would promote judicial economy by encouraging district courts to identify completely the genuine issues of material fact precluding summary judgment.

[24] In *Jones*, the Supreme Court stated that "a rule that occasionally requires a detailed evidence-based review of the record is still, from a practical point of view, more manageable that the rule that petitioners urge us to adopt," *i.e.*, allowing a court of appeals to review the sufficiency of the plaintiff's evidence on interlocutory appeal. 115 S. Ct. at 2159. The Court then noted that the "petitioners' approach would make that task not the exception, but the rule." *Id.* When read in isolation, this language might suggest that the Court has crafted a narrow exception to the collateral order doctrine's separability requirement. To adopt this reading of *Jones*, however, would conflict with the Court's earlier statement in *Jones* that the policies justifying an interlocutory appeal on the purely legal question of qualified immunity do not authorize an abandonment of the separability requirement to permit an interlocutory appeal on the question of evidence sufficiency. Thus, this language from *Jones* is best understood as reflecting the Supreme Court's recognition that a "cumbersome" review of the record increases the risk that a court of appeals will review the

is simply no reason to relax or abandon the collateral order doctrine's separability requirement when a remand will not deprive a defendant of the benefits of raising a qualified immunity defense.

IV.

I respectfully dissent from the denial of rehearing en banc. The question of the proper scope of our review of the summary judgment record in an interlocutory appeal from an incomplete order denying summary judgment is one of considerable importance. Any answer we give must carefully balance the limited nature of our jurisdiction over interlocutory appeals with the policies underlying qualified immunity. For this reason alone, the majority's decision in *Colston* deserves the attention of the full court. More importantly, the balance the majority has struck between these competing concerns conflicts unnecessarily with the Supreme Court's decision in *Jones*. Thus, the court should have taken this case en banc and either affirmed the district court's denial of summary judgment or remanded this case.

---

sufficiency of a plaintiff's evidence.

[25] In the alternative, the majority should have affirmed the district court because Colston's evidence was sufficient to create a genuine issue of material fact as to whether Barnhart should have perceived that Colston was running away at the time he was shot twice in the back.

52