IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 97-50561
_____


TED MEYER, Individually and as Next Friend for Carolyn Preciado, A
Minor; ROSEMARY MEYER, Individually and as Next Friend for Carolyn
Preciado, A Minor; HAROLD ROBBINS, Individually and as Next Friend
for Linda Rosales, now known as Linda Quiroz, A Minor; LINDA
ROBBINS, Individually and as Next Friend for Linda Rosales, now
known as Linda Quiroz, A Minor; PEDRO R AGUIRRE, Individually and
as Next Friend for Angelica Aguirre, A Minor; SYLVIA MARTINEZ,
Individually and as Next Friend for Aglae Martinez, A Minor; JESSE
MARTINEZ, Individually and as Next Friend for Aglae Martinez, A
Minor; HERMINIA LARIOS, Parent of Sarah Ramirez; SARAH RAMIREZ
                                        Plaintiffs-Appellees,


AUSTIN INDEPENDENT SCHOOL DISTRICT; KENT EWING, Principal, Bowie
High School
                                        Defendants-Appellants


_____

Appeal from the United States District Court
for the Western District of Texas
_____
November 16, 1998


Before KING, GARWOOD and HIGGINBOTHAM, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

     Students in a Travis County, Texas, high school alleged that
school administrators illegally denied them procedural due process
by suspending them for gang-related activity.  The magistrate judge
presiding by consent refused to grant summary judgment for the
school principal on the basis of qualified immunity.  Given our
limited jurisdiction on this interlocutory appeal, we affirm.

I

Five minor students and their parents as next friends sued the Austin Independent School District, its board of trustees and school board, superintendent James H. Fox, Bowie High School, and Bowie principal and vice-principal Kent Ewing and Jorge Rodriguez. The complaint was filed in Texas state court and removed by the defendants. After threatening expulsion, the school had suspended the plaintiffs for three days each on the ground that their shirts, which were "maroonish or reddish" and allegedly contained gang insignia, indicated that they were engaging in gang-related activities. The students complained that they had not received procedural due process when they were suspended from school without a hearing, and also made complaints based on the First Amendment, substantive due process, and the Equal Protection Clause.

Defendants filed a motion to dismiss, based in part on the immunity doctrine of Monell v. Department of Soc. Servs., 436 U.S. 658, 690-91 (1978). The parties consented to proceed before a magistrate judge, and the case was reassigned to him for all purposes.[1] The magistrate judge dismissed all claims other than the procedural due process claim, and dismissed the procedural due process claim as it related to Rodriguez in all capacities and Ewing in his official capacity. The AISD remained as a defendant only for the limited purpose of enabling the district court to grant the students' request for injunctive relief regarding certain

_____

[1]This appeal is thus before the court pursuant to 28 U.S.C. § 636(c)(3) (authorizing a direct appeal from a magistrate to the court of appeals). See also Parker v. Collins, 736 F.2d 313 (5th Cir. 1984).

2

AISD records should the court find that the principal violated the students' procedural due process rights.

Ewing and AISD filed a Rule 56 summary judgment motion. The school argued that the parents lacked standing to assert a due process claim and that there were informal "give and take" hearings between the students and the administrators that met the requirements of procedural due process. The magistrate judge, persuaded that the parents lacked standing, granted summary judgment on the due process claims, but denied the motion in all other respects. The magistrate judge found that there was a question of fact as to whether the interviews held with students and parents constituted a "hearing" in which students had been able to present "their side of the story" regarding the events at issue.

The district court did not make explicit factual findings, but assumed for the purpose of summary judgment the facts as set forth by the students. The students submitted affidavits telling similar stories. As they were arriving at school, Rodriguez or Ewing noticed their clothing and inquired as to why they were wearing "gang stuff." The administrators did not give the students a chance to answer the apparently rhetorical questions. Ewing told the students that they would not be allowed to return to Bowie, and a journalism teacher took pictures of the students and their clothing. At no time did any administrator ask the students to explain how they came to wear similarly colored clothing, although several students protested that they did not belong to a gang.

3

The students' parents were ultimately called, and though some argued at length with the principal, the school imposed three-day suspensions. Affidavits of the students and their parents assert that the students were not allowed to urge their side of the story. Some of the parents, however, volunteered that their children did not belong to gangs. After serving their suspensions, the students were given re-entry conferences, and they were then permitted to return to school.

Ewing and AISD appeal from the denial of summary judgment.

II

In Mitchell v. Forsyth, 472 U.S. 511, 530 (1985), the Supreme Court held that "denial of a claim of qualified immunity to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment." See also Coleman v. Houston Ind. Sch. Dist., 113 F.3d 528, 531 (5th Cir. 1997) ("'Denial of summary judgment on the ground of qualified immunity is immediately appealable to the extent that the question on appeal is whether the undisputed facts amount to a violation of clearly established law.'") (quoting Kelly v. Foti, 77 F.3d 819, 821 (5th Cir. 1996)).

The inquiry is a subtle one, because the Supreme Court has confined the Mitchell doctrine. A summary judgment determination based upon whether there is sufficient evidence to create a genuine issue of material fact, the Court has held, is not subject to immediate appeal. See Hare v. City of Corinth, 74 F.3d 633, 638 (5th Cir. 1996) (citing Johnson v. Jones, 515 U.S. 304, 313

4

(1995)).  Under <u>Johnson</u>, this court "cannot review whether the evidence could support a finding that particular conduct occurred, but can take, as given, the facts that the district court assumed when it denied summary judgment and determine whether those facts state a claim under clearly established law."  <u>Southard v. Texas Bd. of Criminal Justice</u>, 114 F.3d 539, 548 (5th Cir. 1997) (internal quotation marks and citations omitted); <u>see also</u> <u>Nerren v. Livingston Police Dep't</u>, 86 F.3d 469, 472 (5th Cir. 1996).

In <u>Behrens v. Pelletier</u>, 516 U.S. 299 (1996), the Supreme Court sought to explain the distinction:

> <u>Johnson</u> held, simply, that determinations of evidentiary sufficiency at summary judgment are not immediately appealable merely because they happen to arise in a qualified-immunity case; if what is at issue in the sufficiency determination is nothing more than whether the evidence could support a finding that particular conduct occurred, the question decided is not truly "separable" from the plaintiff's claim, and hence there is no "final decision" .... <u>Johnson</u> reaffirmed that summary-judgment determinations are appealable when they resolve a dispute concerning an "abstract issu[e] of law" relating to qualified immunity, ... typically, the issue whether the federal right allegedly infringed was "clearly established."

<u>Id.</u> at 313.

In <u>Colston v. Barnhart</u>, 146 F.3d 282 (5th Cir. 1998), we applied the Supreme Court test and distinguished between genuine issues of fact and material issues of fact.  <u>See id.</u> at 284.  We cannot consider a claim "that the district court erroneously concluded that a genuine issue of fact exists."  <u>Id.</u> Therefore, in the instant case, we could not reexamine the plaintiffs' affidavits and determine that these affidavits did not present sufficient evidence that the administrators failed to give them a chance to

5

tell their side of the story.[2]  At the same time, we can consider a claim "that a material issue of fact exists," id., i.e. that the legal conclusion the district court drew was incorrect.  Thus, for example, we would have jurisdiction to hold that meetings with parents always provide adequate due process for children, or to hold that the law does not require school officials to give students a chance to tell their side of the story.  Our inquiry thus narrows to the straits of these guidelines.

                                III

     In Goss v. Lopez, 419 U.S. 565 (1975), the Supreme Court required that before a school suspend a student, the student be "given an opportunity to explain his version of the facts at this discussion" by being "told what he is accused of doing and what the basis of the accusation is."  Id. at 582.  The Court further noted that while such discussion "will add little to the fact-finding function where the disciplinarian himself has witnessed the conduct forming the basis for the charge ... the student will at least have

---

     [2]A caveat is that "where the district court does not identify those factual issues as to which it believes genuine disputes remain, an appellate court is permitted to go behind the district court's determination and conduct an analysis of the summary judgment record to determine what issues of fact the district court probably considered genuine."  Id. at 285.  The magistrate judge here held that there was a genuine issue of fact as to whether the students had been given an opportunity to tell their side of the story.  While the record does not make clear whether the magistrate judge concluded that administrators' meetings with parents can be adequate substitutes for meetings with the students provided the parents relay the students' stories, our best assessment is that the magistrate judge also found a genuine issue of fact as to whether the parents had been able to present their children's stories.

the opportunity to characterize his conduct and put it in what he deems the proper context." Id. at 584.

The appellants seize on this latter language, arguing that the disciplinarian here witnessed the conduct. But the relevant "conduct" here is belonging to a gang, and the wearing of clothes is merely evidence of that conduct.[3] Moreover, this focus does not confront the Supreme Court's common sense admonition that "things are not always as they seem to be, and the student will at least have the opportunity to characterize his conduct and put it in what he deems the proper context." Id. We do not read Goss to exempt conduct witnessed by the school official, and we are unpersuaded that the students' assumed inability to tell their stories was here immaterial.

We need not decide here whether a meeting with a parent is necessarily a sufficient substitute for a meeting between an administrator and a student. We recognize that Goss speaks immediately to the opportunity of students to defend themselves, not an opportunity for parents to defend their children. Under some circumstances, a parent may serve as an acceptable surrogate for a student, whose story is told through the parent. As long as

---

[3]Appellants note that Bowie had adopted a policy prohibiting the wearing of any clothing in any manner other than that for which it was designed, and stating that the school would take action if a student's appearance conflicted with the safety, health, behavior, or learning environment within the school. The policy, however, notably does not ban "reddish or maroonish" clothing. Thus, the school officials did not directly witness prohibited conduct, as would be the case if, for example, they caught a student red-handed violating a weapons policy by smuggling a gun into the school.

7

the student's story is told, either directly or through a reliable intermediary standing in loco parentis to the child, the requirements of Goss are met. Even given the parent's power to act as a surrogate for a child where the parent is given the opportunity to tell the child's side of the story, we cannot disturb the district court's factual conclusion that there is a genuine issue as to whether the students were able to tell their side of the story, including the parents in the mix. Our limited jurisdiction also means that we cannot disturb this conclusion by considering whether the re-entry conferences were adequate post-deprivation hearings at which the students were given a chance to tell their side of the story.[4]

The appellants contend in the alternative that the administrators acted as reasonable public officials would and thus are entitled to qualified immunity. Reasonable public officials, however, could not differ on whether allowing the students to tell their side of the story was required. To overcome the defense of qualified immunity, a plaintiff must show that the contours of the

---

[4]The Goss Court specified that the hearing should be "preferably prior to the suspension," 419 U.S. at 584, indicating that a hearing subsequent to the suspension might be appropriate. We have recognized before that post-suspension hearings may afford students adequate procedural due process. In Sweet v. Childs, 518 F.2d 320, 321 (5th Cir. 1975), we held, "The post-suspension student-parent conferences sufficed as informal 'give-and-take' sessions in which the students could air their views as to the events leading up to the suspensions." That case differed from this one in that the students had left the school premises before the suspensions were announced, so no hearing could have been held on that day. The case nonetheless reaffirms the proposition that predeprivation hearings are not always required.

constitutional right were "sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). "Where reasonable public officials could differ on the lawfulness of the official's actions, the official is entitled to qualified immunity." Cantu v. Rocha, 77 F.3d 795, 806 (5th Cir. 1996).

Appellants emphasize that it was reasonable for Ewing to be concerned about the appearance and behavior of the students, because he had heard that a gang fight was imminent. What is at issue here, however, is not the appellants' aims, but his means. While he was free to suspend the students after hearing their stories, Goss unambiguously required him to allow them to present those stories, and if he did not do so, he violated the students' due process rights.

We hold that given the district court's finding that there was insufficient summary judgment evidence to force the conclusion that the students were able to tell their side of the story, we cannot upset the summary judgment on the qualified immunity issue. Of course, Principal Ewing still has a qualified immunity defense available to him at trial. He thus may show that the students, either personally or through their parents, were able to tell their side of the story.

AFFIRMED.

9