# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 10, 2011

No. 10-60392

Lyle W. Cayce
Clerk

DEREK HARRIS, by and through his parents and next friends, Robert and Phyllis Harris; PHYLLIS HARRIS, Individually,

Plaintiffs - Appellants

v.

PONTOTOC COUNTY SCHOOL DISTRICT; KEN ROYE, individually and in his official capacity of Superintendent of Pontotoc County School District,

Defendants - Appellees

Appeal from the United States District Court
for the Northern District of Mississippi

Before KING, DAVIS, and SOUTHWICK, Circuit Judges.

Leslie H. Southwick, Circuit Judge:

Derek Harris and his mother, Phyllis Harris, brought suit against the Pontotoc County School District and its superintendent, Ken Roye. They alleged that Derek was denied his due process rights and defamed, and that Mrs. Harris had her First Amendment rights violated and suffered tortious interference with her contract of employment with the school district. Summary judgment was granted to the defendants. We AFFIRM.

No. 10-60392

STATEMENT OF FACTS

Derek Harris was an eighth grade student at South Pontotoc Middle School. His mother Phyllis Harris was the secretary for the principal of South Pontotoc Elementary School. Both schools are within the Pontotoc County School District and located on the same campus.

In September 2008, Derek and a friend emailed their computer teacher, Terina Dexter, asserting they had hacked into Dexter's computer. Later in the email, the boys stated they were only joking about having hacked into her computer. About two weeks later, Derek sent Dexter a message during computer class that read, "you might need to tell the admin the school is vulnerable to a DoS," which is an acronym for a denial of service attack. Dexter informed Melanie Kidd, the District's technology coordinator, of the message. Kidd informed Scotty Collins, the middle school principal.

Several days later, Ken Roye, the District's superintendent, learned of Derek's communications and asked Kidd to investigate. Knowing that Derek often used his mother's computer at the elementary school, Kidd recovered a log of all internet queries from Mrs. Harris's computer. Some of the queries related to hacking, key loggers, and denial of service attacks.

The next day, Kidd contacted the Mississippi Department of Education. The Department agreed to send a computer analyst, Glen Popeil, the following morning to inspect the network's security and possibly speak with Derek.

At 7:11 the next morning, October 17, Derek used his mother's computer at the elementary school to send an email to Chris Garrard, a computer technician at the middle school. Derek requested help with running two batch files. He also asked whether Garrard had heard of a denial of service attack. Garrard immediately forwarded the email to Kidd, who then forwarded the email to Collins and Roye with the following message:

2

This student has issues and in my opinion needs to be off our network and SURELY does not need to be using his mother's computer to send emails. [Mississippi Department of Education] network security will be here at 9:00 this morning. It would make EVERYONE[']S life much better [i]f he would tell[] us where the batch files are and what [he] has attempted to do. If [the Department] has to comb our network it is going to get ugly!

Around 7:48 a.m., the District began experiencing network problems. At 9:00 a.m., Popeil arrived at Kidd's office. The two of them removed Mrs. Harris's computer from the network and disconnected the school's internet connection. The network problems ended at 9:15 a.m.

From there, Collins, Popeil, Kidd, and Garrard went to Derek's second-period computer class, unplugged the computer Derek was using, and removed Derek from class to question him.

Derek's version of subsequent events was that he was taken to a classroom, where Collins searched Derek's bag and asked whether he had any flash drives or disks. Derek told Collins he had a disk with a demonstration of a key logger program. Collins asked Derek why he had the disk. Derek responded that he brought it for Collins' wife, the school counselor and his third-period teacher, because she had recently asked Derek how key logger programs work. Garrard told Derek that someone had engaged in a denial of service attack on the school server.

Derek was then taken to another room, where Collins, Popeil, Kidd, and Garrard questioned him about his knowledge of computers and what he had done. They presented him with a copy of the email he had sent Garrard that morning and a copy of the school's acceptable-use policy for computers. They then identified what rules he had broken and told him that he was being investigated for causing the denial of service attack. According to Derek, they said that "his mother could lose her job, he could go to jail, his plans for college were over, and [his] father would be responsible for all the damage [he] caused."

3

No. 10-60392

Derek denied any knowledge of the attack, and named a student at another high school who might have been responsible. Derek then returned to class.

Between fourth and fifth periods, Derek met with Collins to inquire about the status of the investigation. Collins said that he did not have any more information other than that Derek was being blamed for the attack, and that he would be suspended until the investigation was complete. At that point, Derek's mother joined the meeting. Collins presented this letter:

> Derek was found in [possession] of "key logger" software this morning. That same "key logger" software was installed on a computer. Also this morning, someone set up a school computer to "ping" our network which caused our network to slow down and stop working. This "pinging" could have caused damage to our networks.

> We suspect that Derek may be responsible for this pinging attack. He has admitted to bypassing the security on a school computer to pull up the [Disk Operating System] prompt.

> A network specialist from the state department of education is here in the district investigating our computer network. Until such time as he completes his investigation, Derek is suspended from school.

At other times, the "pinging" incident was referred to as a denial of service attack. Later that afternoon, after Mrs. Harris and Derek had returned home, Mrs. Harris spoke with Superintendent Roye on the telephone about what Derek was suspected of having done and what punishment was being considered.

On October 22, both of Derek's parents met with Roye to discuss the situation. Roye told them he would recommend to the school board that Derek be sent to alternative school for 45 days. Mrs. Harris complained about what she considered unfair treatment of her son, requested further process, contested some of the allegations against Derek, and asked him to instruct teachers to stop discussing Derek in front of students. Roye allegedly replied that there was "no due process" and that he could not stop his employees from talking.

No. 10-60392

The school board approved Roye's recommendation on October 23. Derek began attending alternative school on October 27. That same day, Roye received an email from the high school principal indicating that several teachers were concerned that personal information might have been compromised by Derek's possible access to the information on his mother's computer. According to the District, Roye decided to reassign Mrs. Harris to an assistant teacher's position to limit her access to computers containing confidential information.

On November 3, Mrs. Harris found out about the reassignment. She left the office and returned home. Her husband called Roye to protest this change in duties and Derek's punishment. He later alleged that Roye made these statements: if they were considering a lawsuit, Mrs. Harris would be fired; she had been reassigned because she had "bad mouthed" Roye around town; and parents did not trust her around their children. Mrs. Harris grabbed the phone and called Roye "a liar"; Roye alleges she also used profanity towards him. Roye immediately terminated her employment over the phone.

On Derek's behalf, his parents sued the District and Roye; Mrs. Harris also sued individually. These were the claims: Derek's right to due process was violated; Derek was defamed; Mrs. Harris was wrongfully terminated in retaliation for protected First Amendment speech; Roye tortiously interfered with her employment contract.

The district court granted summary judgment to the District on all claims. A timely appeal followed.

## DISCUSSION

A grant of summary judgment is reviewed *de novo*. *Bolton v. City of Dallas*, 472 F.3d 261, 263 (5th Cir. 2006). Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The movant has the burden of showing that summary judgment is appropriate, and we view the evidence in

No. 10-60392

the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Once the moving party has carried its burden, the non-movant must come forward with specific facts showing a genuine factual issue for trial. *Id.* at 587.

I.     *Derek's Due Process Claim*

A State's extending the right to an education creates a property interest protected by the Due Process Clause of the Fourteenth Amendment; a State "may not withdraw that right on grounds of misconduct absent[] fundamentally fair procedures to determine whether the misconduct has occurred." *Goss v. Lopez*, 419 U.S. 565, 574 (1975) (citation omitted). A student's transfer to an alternative education program does not deny access to public education and therefore does not violate a Fourteenth Amendment interest. *See Nevares v. San Marcos Consol. Indep. Sch. Dist.*, 111 F.3d 25, 26-27 (5th Cir. 1997). Thus, we analyze only Derek's temporary suspension.

Because Derek was subject to a temporary suspension of no more than 10 days, he had to "be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story." *Goss*, 419 U.S. at 581. "[I]n being given an opportunity to explain his version of the facts at this discussion, the student [must] first be told what he is accused of doing and what the basis of the accusation is." *Id.* at 582. There is no particular delay or formality required, but there must be at least "an informal give-and-take between student and disciplinarian." *Id.* at 582, 584. In addition, "a parent may serve as an acceptable surrogate for a student" to tell the student's side of the story. *Meyer v. Austin Indep. Sch. Dist.*, 161 F.3d 271, 275 (5th Cir. 1998).

In this case, the district court summarized its findings in this way:

Derek admitted to having possession of a key logger program and to using his mother's school computer to send emails and attempt

6

No. 10-60392

internet searches in violation of the school district's policy. Derek clearly and admittedly violated the district's policy, and the record reveals that both Derek and his parents were adequately informed of the accusations against Derek and the reasons for the disciplinary measures taken and were afforded an adequate opportunity to respond.

We disagree with part of the district court's summary of the evidence. As we view the evidence, Derek did not admit to having possession of an operative key logger program. Instead, when initially questioned and continuing in this suit, he has asserted that the relevant disk contained a demonstration of a non-functioning key logger program. Further, though the district court was correct that Derek seemingly admitted to using his mother's school computer to send emails and conduct internet searches that violated District policy, his suspension was not based on those actions. Consequently, we do not rule on the grounds used by the district court, namely, that Derek admitted to the offense. Instead, we examine whether he was given the process that was due.

We must first be clear as to the basis for his suspension. These are the charges in the letter given to Derek: (1) he had possession of a key logger program, the same program that was installed on a school computer; (2) a school computer had been set up to "ping" the school's network and Derek was suspected of being responsible; and (3) Derek admitted to bypassing the security on a school computer to pull up the Disk Operating System prompt.

The truth of these charges is not the question in evaluating whether *Goss* has been satisfied. Instead, the issue is whether Derek was adequately informed of the specific charges from which the suspension derived, and whether he was given "an opportunity to present his side of the story." *Goss*, 419 U.S. at 581. He received the written charges on the day he was suspended. The remaining fact issue, then, is whether he or his parents had a chance to respond to the charges. Derek and his parents had numerous opportunities to meet with school

7

officials, to hear some of the charges, and to explain and respond. We examine the evidence to see if there is any dispute that he or his parents were aware of all the charges and had a chance to explain and respond.

Derek's multiple opportunities to give his side of the story included two morning meetings, one with Collins and Garrard, and a second with Collins, Popeil, Kidd, and Garrard. As to the key logger program, Derek explained that his disk only contained a non-functioning demonstration of the program, which he alleged to have brought for Collins's wife. He denied doing anything on a computer that caused the network attack, and said that he did not know what had happened. Derek offered the name of another student who he thought might have been responsible. Additionally, there is uncontested evidence that Derek admitted to bypassing the security on a school computer to access the Disk Operating System prompt. *Porter v. Ascension Parish Sch. Bd.*, 393 F.3d 608, 624 (5th Cir. 2004).

It is not clear that Derek had an opportunity to respond to the suspension letter itself. The letter was delivered at the final meeting of the day with Derek and his mother. Collins stated in an affidavit that he explained the reasons for the suspension. On the other hand, Derek and his mother contend that Collins did not mention the key logger software at the time the letter was given to them. The letter certainly made that assertion, regardless of whether Collins orally articulated it as well. Derek was not required to have an opportunity to respond at the exact moment of suspension. *See Meyer*, 161 F.3d at 275 n.4; *Goss*, 419 U.S. at 582-84. Derek already had been given explanations of the accusations against him and an opportunity to respond to them. That process was sufficient.

Summary judgment was proper as to the due process claim.

II.    *Derek's Defamation Claim*

No. 10-60392

Derek alleges that he was defamed when teachers made comments to students that he was a "hacker" and had changed grades. All of Derek's allegations are based either on hearsay or on statements made directly to him.

Hearsay evidence inadmissible at trial cannot be used to create a genuine issue of material fact to avoid summary judgment. *Broadway v. City of Montgomery*, 530 F.2d 657, 661 (5th Cir. 1976). Defamatory statements must be made to a third party and not to the claimant. *See Smith v. Jones*, 335 So. 2d 896, 897 (Miss. 1976). Summary judgment on the defamation claim was proper.

III.   *Mrs. Harris's First Amendment Claim*

Mrs. Harris argues that her freedom of speech was violated when Roye fired her in retaliation for protesting the actions against Derek and for threatening to take legal action against the District.

The First Amendment protects a public employee's speech in cases of alleged retaliation only if the speech addresses a matter of "public concern." *Connick v. Myers*, 461 U.S. 138, 147 (1983). Whether speech is of public concern is "determined by the content, form, and context of a given statement, as revealed by the whole record." *Id.* at 147-48. "Because almost anything that occurs within a public agency *could* be of concern to the public, we do not focus on the inherent interest or importance of the matters discussed by the employee." *Terrell v. Univ. of Tex. Sys. Police*, 792 F.2d 1360, 1362 (5th Cir. 1986). Rather than looking at whether the public might or would have an interest in the matter, the court examines whether the speaker's motivation was to speak primarily as a citizen or as an employee. *Dodds v. Childers*, 933 F.2d 271, 273 (5th Cir. 1991). In cases of mixed speech or motives, "the speaker must have spoken *predominantly* 'as a citizen' to trigger First Amendment protection." *Id.* at 274 (citation omitted). If the speech is not of public concern, we do not question the employer's motivations for taking action against the employee. *Id.* at 273.

9

Despite Mrs. Harris's conclusional statements that she questioned whether the District's "lack of due process for students complied with the United States Constitution and established case law," the evidence in the record shows only a mother who complained about the treatment her child received in a discrete incident and an employee who was upset at being reassigned.  Both matters are personal.  It is evident that she did not speak predominantly as a citizen, thus the District was entitled to summary judgment on this claim.

*IV.    Mrs. Harris's Tortious Interference Claim*

Mrs. Harris also brought a claim against Roye individually for tortious interference with her employment contract.  An employee in a position of responsibility who thereby is a party to the employment contract cannot be held liable for tortious interference with a contract unless the employee acted outside the scope of his authority and with bad faith.  *Morrison v. Miss. Enter. for Tech., Inc.*, 798 So. 2d 567, 574-75 (Miss. Ct. App. 2001).  Mrs. Harris argues that Roye fired her in retaliation for questioning Derek's discipline and for her threats to sue.  She did not, however, offer any evidence to indicate the claim is anything other than duplicative of her unsuccessful First Amendment claim.  Roye was not acting outside the scope of his authority when he fired Mrs. Harris.  Summary judgment was appropriate.

AFFIRMED.